United States Court of Appeals,

Eleventh Circuit.

No. 96-8085.

Ramsey AGAN, Petitioner-Appellant,

v.

James VAUGHN, Respondent-Appellee.

Aug. 27, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-cv-1162-WCO), William C. O'Kelley, Judge.

Before ANDERSON and CARNES, Circuit Judges, and STROM[*], Senior District Judge.

CARNES, Circuit Judge:

Ramsey Agan was convicted on three counts of bribery in the Superior Court of DeKalb County, Georgia. After exhausting his state remedies, Agan filed in federal district court a 28 U.S.C. § 2254 petition for a writ of habeas corpus. This appeal arises from the district court's denial of Agan's petition.

## I. BACKGROUND

Because a detailed recitation of the facts can be found in the Georgia Court of Appeals opinion on direct appeal, *see Agan v. State,* 191 Ga.App. 92, 380 S.E.2d 757, 759-60 (1989), *aff'd in part, rev'd in part,* 259 Ga. 541, 384 S.E.2d 863 (1989), *and cert. denied,* 494 U.S. 1057, 110 S.Ct. 1526, 108 L.Ed.2d 765 (1990), we will summarize them only briefly here. Agan, the Honorary Turkish Consul in Atlanta, owned a piece of property in DeKalb County, Georgia, upon which he wanted to construct a hotel. In order to construct the hotel, he needed a building height variance from the DeKalb County Commission. The Commission rejected the variance application twice. In conjunction with his third request, Agan approached and met separately with two individual commissioners in an attempt to persuade them to get the variance application approved. Agan gave one of the commissioners five checks totaling $4,500, each check marked "campaign contribution."

---

[*]Honorable Lyle E. Strom, Senior U.S. District Judge for the District of Nebraska, sitting by designation.

He gave the other commissioner a $3,000 check, also marked "campaign contribution." Agan gave the checks to the commissioners over their protests that they were not up for reelection, and over one commissioner's objection that he did not even have a campaign account.

A jury convicted Agan on three counts of violating § 16-10-2(a)(1) of the Georgia Code, which defines the crime of bribery to include offering or giving to a public official any consideration "to which he or she is not entitled with the purpose of influencing him or her in the performance of any act related to the functions of his or her office or employment." On direct appeal, for which Agan had new counsel, the Georgia Court of Appeals reversed Agan's conviction because of a jury instruction, holding that "the trial court's definition of "entitled,' while not wholly incorrect, was incomplete and misleading in the context of this case and could have misled the jury to appellant's prejudice." *Agan,* 380 S.E.2d at 762 (citation omitted).

The Georgia Supreme Court reversed that reversal. *See State v. Agan,* 259 Ga. 541, 384 S.E.2d 863 (1989). The Georgia Supreme Court interpreted the Georgia Court of Appeals' holding to mean "in effect, that if money given to an office holder qualifies as a campaign contribution, requiring reporting under the Ethics in Government Act, OCGA § 21-5-1 et seq., then it cannot be a bribe." *Id.* at 866. The Georgia Supreme Court rejected that interpretation of the law and reinstated Agan's conviction, subject to a remand for further proceedings relating to his selective prosecution claim. *See id.* at 868-70. Agan petitioned for a writ of certiorari from the United States Supreme Court, but it was denied. *See Agan v. Georgia,* 494 U.S. 1057, 110 S.Ct. 1526, 108 L.Ed.2d 765 (1990).

On remand, after an evidentiary hearing, the trial court denied Agan's motion to dismiss for selective prosecution. While his post-remand appeal from the denial of his motion to dismiss on selective prosecution grounds was pending, Agan filed an extraordinary motion for a new trial. That motion alleged for the first time that trial counsel had prevented Agan from testifying at his trial and thereby had rendered ineffective assistance. After the trial court held a hearing on the issue, it determined that Agan had waived the claim. Accordingly, the trial court entered an order denying

2

the new trial motion. The Georgia Court of Appeals denied Agan's application for discretionary review of that ruling.

Meanwhile, both the Georgia Court of Appeals and the Georgia Supreme Court affirmed the denial of Agan's motion to dismiss for selective prosecution, and the U.S. Supreme Court again denied Agan's petition for certiorari. *See Agan v. State,* 203 Ga.App. 363, 417 S.E.2d 156 (1992), *aff'd,* 262 Ga. 783, 426 S.E.2d 552 (1993), *and cert. denied,* 510 U.S. 819, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993).

Having exhausted his state remedies, Agan filed a federal habeas petition. In it, Agan claimed that: (1) his conviction violated his First Amendment rights to free association and free speech; (2) the jury charge in his case violated his Fourteenth Amendment right to due process; (3) his conviction was obtained through unconstitutional selective prosecution; and (4) his attorney and the trial court denied him the right to testify, resulting in ineffective assistance of counsel. The district court referred Agan's petition to a magistrate judge, who recommended that the petition be denied. The district court adopted the magistrate judge's recommendation and denied Agan's petition. Agan filed a timely appeal to this Court.

## II. STANDARDS OF REVIEW

On appeal, Agan contends that his conviction violates his First Amendments rights to free association and free speech and his Fourteenth Amendment right to due process. We review those purely legal questions *de novo. See Redner v. Dean,* 29 F.3d 1495, 1499 (11th Cir.1994) (reviewing First Amendment habeas claim); *McCoy v. Newsome,* 953 F.2d 1252, 1264-65 (11th Cir.1992) (reviewing Fourteenth Amendment due process claim based on inadequate jury charge). Agan also pursues his ineffective assistance of counsel claim, which presents a mixed question of law and fact that we review *de novo. See Huynh v. King,* 95 F.3d 1052, 1056 (11th Cir.1996). The State argues that Agan is barred from raising that claim because of procedural default. Whether Agan is procedurally barred from raising a particular claim is a mixed question of law and fact, which we also review *de novo. See Lusk v. Singletary,* 112 F.3d 1103, 1105 (11th Cir.1997) (reviewing district

3

court's determination that petitioner had defaulted issue in state court system) (citation omitted). Agan has abandoned his selective prosecution claim.

## III. DISCUSSION

Agan is not entitled to federal habeas relief unless he "is in custody in violation of the Constitution or laws or treaties of the United States."[1] 28 U.S.C.A. § 2254(a) (West 1994).

## A. FIRST AMENDMENT ISSUES

Agan claims that his conviction under Georgia's bribery statute violates the First Amendment. Agan was convicted for violating the following portion of that statute:

> A person commits the offense of bribery when: (1) He or she gives or offers to give to any person acting for or on behalf of the state or any political subdivision thereof, or of any agency of either, any benefit, reward, or consideration to which he or she is not entitled with the purpose of influencing him or her in the performance of any act related to the functions of his or her office or employment....

Ga.Code Ann. § 16-10-2(a) (1996). He challenges the statute's constitutionality on its face and as applied to his conduct.[2]

### 1. *Facial Attack*

Agan claims that Georgia's bribery statute is overbroad. A statute that may be applied constitutionally to conduct in some cases is nevertheless facially invalid under the First Amendment if it is substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases. *See, e.g., Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973) ("[W]here conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly

---

[1] Because Agan filed his habeas petition before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the new act does not apply to Agan's habeas petition. *See Lindh v. Murphy,* --- U.S. ----, ----, 117 S.Ct. 2059, 2068, --- L.Ed.2d ---- (1997).

[2] At least where AEDPA does not apply, precedent indicates that a habeas petitioner may bring a facial challenge to the state statute under which he was convicted if that statute threatens conduct protected by the First Amendment, even though the petitioner could have been prosecuted constitutionally under a narrower statute. *See Gooding v. Wilson,* 405 U.S. 518, 520-21, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *Redner,* 29 F.3d at 1499 (11th Cir.1994). The AEDPA amendments may preclude such facial attacks in habeas proceedings, but that is an issue we need not decide because of AEDPA's inapplicability to this case.

legitimate sweep.");  *Clean Up '84 v. Heinrich,* 759 F.2d 1511, 1513 (11th Cir.1985).  According to Agan, Georgia's bribery statute criminalizes the donation of campaign contributions whenever the donor hopes that the contributions will "influence" a state officer's official actions.  Agan asserts that:  (1) campaign donors *usually* hope to "influence" the official actions of state officers;  (2) there are benign or "good influencing campaign contributions";  and (3) the First Amendment protects the donation of those contributions.  He argues that the Georgia statute is unconstitutionally overbroad, because it does not differentiate between good influencing campaign contributions and bad influencing campaign contributions.[3]  Agan concedes that if the Georgia bribery statute criminalizes only those contributions that are made with corrupt intent, it is facially valid.

Georgia, unlike many other states, does not include an element of corrupt intent in the text of its bribery statute.  *Compare* Ga.Code Ann. § 16-10-2 (1996) *with* Ala.Code § 13A-10-61(a) (1975) ("A person commits the crime of bribery if (1) He offers ... any thing of value upon a public servant with the intent that the public servant's vote, opinion, judgment, exercise of discretion or other action in his official capacity will thereby be *corruptly influenced* ") (emphasis added); Ariz.Rev.Stat. Ann. § 13-2602 (West 1989) ("A person commits bribery of a public servant or party officer if *with corrupt intent* ... [s]uch person offers, confers or agrees to confer any benefit upon a public servant or party officer with the intent to influence the public servant's or party officer's vote, opinion, judgment, exercise of discretion or other action in his official capacity as a public servant or party officer.") (emphasis added);  Fla. Stat. Ann. § 838.015(1) (West 1994) (" "Bribery' means *corruptly* to give, offer, or promise to any public servant ... any pecuniary or other benefit with an intent or purpose to influence the performance of any act or omission which the person believes to be ... within the official discretion of a public servant ....") (emphasis added);  Mich. Comp. Laws Ann. § 750.117 (West 1991) ("Any person who shall *corruptly* give, offer or promise to any public officer ... any gift, gratuity, money, property or other valuable thing, the intent or purpose of which

---

[3]Agan does not contend in this appeal that the First Amendment requires the Georgia bribery statute to contain a quid pro quo element, although he made that argument on direct appeal in the state courts.

is to influence the act, vote, opinion, decision or judgment of such public officer ... shall be guilty of a felony.")(emphasis added); Ohio Rev.Code Ann. § 2921.02(A) (Banks-Baldwin 1996) ("No person, with purpose to *corrupt* a public servant or party official ... shall promise, offer, or give any valuable thing or valuable benefit.") (emphasis added); Okla. Stat. tit. 21, § 381 (1997) ("Whoever *corruptly* gives, offers, or promises to any ... public officer ... any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision, or judgment on any matter, question, cause, or proceeding which then may be pending, or may by law come or be brought before him in his official capacity ... shall be punished by imprisonment ....") (emphasis added); R.I. Pub. Laws § 11-7-4(a) (1996) ("No person shall *corruptly* give or offer any gift or valuable consideration to any person in public or private employ, or any public official as an inducement or reward for doing or forebearing to do, or for having done or forborne to do, any act ....") (emphasis added); *and* S.C.Code Ann. § 16-9-210 (Law Co-op.1976) ("Whoever *corruptly* gives, offers or promises to any ... officer, after his election or appointment ... any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision or judgment on any matter, question, cause or proceeding which may be pending or may by law come or be brought before him in his official capacity, shall be punished by imprisonment ....") (emphasis added).

However, Georgia decisions have read an element of corrupt intent into its bribery statute. In *King v. State,* 246 Ga. 386, 271 S.E.2d 630 (1980), the Georgia Supreme Court explained that the bribery statute requires proof that the defendant had the purpose or intent of *corruptly inducing* the government official to take a given action. *See id.* at 632. Likewise, in *Ingram v. State,* 97 Ga.App. 468, 103 S.E.2d 666 (1958), the Georgia Court of Appeals held that "[t]he essential elements of the offense [of bribery] are ... the offer or gift, *the purpose to corruptly influence,* and the official status of the offeree." *Id.* at 670 (construing former Code 1933, §§ 26-4101 and 26-4102) (emphasis added). Significantly, in Agan's appeal to the Georgia Supreme Court, the court cited the *King* decision for the proposition that bribery has a well-known meaning, which is the "act of influencing the action of another by *corrupt inducement.*" *See State v. Agan,* 259 Ga. 541, 384 S.E.2d 863, 867

6

(1989) (emphasis added). Contrary to what Agan suggests, Georgia's bribery statute proscribes only those campaign donations that are made with corrupt intent.

We have not been cited to a Georgia decision expressly defining "corrupt" or "corruptly," but the term "corruptly" is generally used to mean "import[ing] a wrongful design to acquire some pecuniary or other advantage." *Black's Law Dictionary* 345 (6th ed.1990). *See also United States v. Jackson,* 72 F.3d 1370, 1375 (9th Cir.1995) (upholding bribery conviction under California law, which defines "corruptly" as "import[ing] a wrongful design to acquire or cause some pecuniary or other advantage to the person guilty of the act or omission referred to, or to some other person"), *cert. denied,* --- U.S. ----, 116 S.Ct. 1546, 134 L.Ed.2d 649 (1996); *State v. Walker,* 185 Ariz. 228, 914 P.2d 1320, 1334 (Ct.App.1995) (defining "corruptly" for purpose of bribery statute as "import[ing] a wrongful design to acquire or cause some pecuniary or other advantage to the person guilty of the act or omission referred to, or to some other person"); *State v. Hair,* 114 N.C.App. 464, 442 S.E.2d 163, 165 (1994) (explaining in bribery case that "[a] corrupt intent means "a wrongful design to acquire some pecuniary profit or other advantage' ") (citation omitted).

The State of Georgia contends that, with regard to the bribery statute, a corrupt intent means an intent to influence the state officer's official conduct on a particular matter, instead of generally. The Georgia bribery cases support that contention. *See, e.g., Perry v. State,* 118 Ga.App. 22, 162 S.E.2d 466, 467-68 (1968) ("Bribery may consist in an offer to give money or to make any promise for the payment, delivery, or alienation of any money, to any officer of this State, in order to influence his behavior in any matter pending before him."); *see also Lee v. State,* 204 Ga.App. 283, 418 S.E.2d 809, 811 (1992) (upholding bribery conviction where there was sufficient evidence that defendant offered police officer money to participate in drug distribution activities); *Jennings v. State,* 81 Ga.App. 823, 60 S.E.2d 183, 183 (1950) (upholding bribery conviction where there was sufficient evidence that defendant had offered arresting officer fifty dollars not to prosecute him for possession of unstamped whiskey).

7

Ignoring Georgia's long line of cases requiring corrupt intent, Agan argues that Georgia courts will find the bribery statute satisfied by evidence that is entirely consistent with an intent to "influence" an official in "good" ways, such as by supporting the nomination or election of the official. Agan has cited no cases to support that assertion, and we have found none. Indeed, the Georgia Supreme Court has reversed a bribery conviction where the evidence supported inferences of both corrupt intent and lawful intent. *See Upton v. State,* 166 Ga.App. 541, 305 S.E.2d 1, 3 (1983) (reversing bribery conviction for city engineer who received payment from city contractor where evidence was consistent with finding that city engineer had received money for work actually done on project). Moreover, in Agan's case, the Georgia Supreme Court concluded that the evidence supported a beyond a reasonable doubt finding that Agan's intent in giving the checks to the commissioners was to influence their votes on the zoning variance request. In reaching that conclusion, the Georgia Supreme Court was careful to distinguish having an unlawful intent from having the lawful intent to influence the nominations or elections of public officials, or the lawful intent to influence public officials through non-monetary persuasion. As that court explained:

> Citizens of Georgia have every right to try to influence their public officers—through petition and protest, promises of political support and threats of political reprisal. They do not have, nor have they ever had, the "right" to buy the official act of a public officer. Public officers are not prohibited from receiving *legitimate financial aid in support of nomination or election to public office.* They do not have, nor have they ever had, the "right" to sell the powers of their offices.

*Agan,* 384 S.E.2d at 867 (internal citations omitted).

A facial attack on a statute may not succeed where the statute in question has been interpreted by the state courts in such a way as to make the statute's operation constitutional. *See Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916. Agan concedes that if the bribery statute has a corrupt intent element, it does not violate the First Amendment. We conclude that Georgia's law of bribery does include as an element corrupt intent. Accordingly, we reject Agan's facial challenge.

### 2. *As-Applied Challenge*

Agan further claims that, even if the bribery statute is not unconstitutional on its face, it is unconstitutional as applied to his conduct. Because Agan concedes that proof of corrupt intent

8

would make his conviction valid under the First Amendment, his as-applied challenge turns on whether there was sufficient evidence of corrupt intent in Agan's case. As we explained above, in Georgia corrupt intent is shown by evidence of an intent to influence a state officer's official conduct in a particular matter. Thus, if there was evidence introduced at Agan's trial sufficient for a jury to find beyond a reasonable doubt that Agan offered the county commissioners money with the intent to influence their conduct on his zoning variance request, as distinguished from doing so for the purpose of getting them reelected, Agan's as-applied challenge fails.

We conclude that a jury could find beyond a reasonable doubt that Agan made his "campaign contributions" to the county commissioners with the corrupt intent of purchasing their votes on his variance request. We will not set forth all of the evidence relevant to that issue, because the Georgia Court of Appeals detailed that evidence in the context of discussing Agan's sufficiency-of-the-evidence argument for reversal. *See Agan,* 380 S.E.2d at 759-60. However, we will point out some of the key evidence supporting Agan's conviction. Commissioner Fletcher testified that Agan approached him about his variance request and, in the same conversation, spoke about friends who wanted to support Fletcher's campaign. Fletcher discouraged the idea, explaining to Agan that he was not currently campaigning for reelection. Nevertheless, Agan soon presented Fletcher with checks totaling $3,700 marked "campaign contribution." At that time, Fletcher told Agan he did not have a campaign bank account, but Agan told him to keep the money. At trial, the State also introduced a videotape of a meeting between Agan and Commissioner Robert Lanier concerning the variance request. At that meeting, Agan offered Lanier a $3,000 check marked "campaign contribution," even though Lanier told Agan that he was not up for reelection for three years.

Based on the testimony of Fletcher and the videotape of the meeting with Lanier, a reasonable jury could find that Agan's intent in making the donations was to influence the commissioners' decisions regarding his zoning variance request, not to support the commissioners' reelection attempts. Because the State provided sufficient evidence of corrupt intent to prove that

9

element, and as Agan concedes, a valid finding of corrupt intent defeats his as-applied challenge, that challenge fails.

## B. FOURTEENTH AMENDMENT

Agan challenges the adequacy of the trial court's jury charge on bribery. He claims that the court failed to charge the jury on corrupt intent or otherwise instruct the jury on the vital distinction between corrupt campaign contributions and lawful campaign contributions. Agan argues that as a result the jury could have, and in fact did, convict him of conduct that it is not proscribed by Georgia's bribery statute.

As a federal court of appeals, we do not have the final say on what instructions a bribery charge must contain in order to accurately state Georgia law. That is the purview of the Georgia Supreme Court, which already has decided that Agan's jury charge correctly and adequately explained the State's bribery statute. *See Agan,* 384 S.E.2d at 865-67. Our limited role on habeas review, when faced with a challenge to a state law jury charge, is to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process. *See Carrizales v. Wainwright,* 699 F.2d 1053, 1055 (11th Cir.1983). In making that determination, we do not judge portions of the jury charge, or even the entire charge, standing alone. A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair. *See Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Jacobs v. Singletary,* 952 F.2d 1282, 1290 (11th Cir.1992).

We conclude that the instructions given to Agan's jury were not so misleading as to violate his right to due process. Prior to instructing the jury on the applicable law, the court read the indictment charging Agan with multiple counts of bribery. The text of the indictment states specifically what elements the jury was obligated to find in order to convict Agan of each count of bribery. The court told the jury:

> The Grand Jury of DeKalb County charge[s] and accuses, in Count 1, [ ] Ramsey Agan with the offense of bribery and they allege, in the County of DeKalb and the State of Georgia, on the 19th day of June, 1987, gave DeKalb County Commissioner John Fletcher, a person acting on behalf of DeKalb County, a political subdivision of the State of Georgia,

a consideration to which he was not entitled, to wit: checks in the amount of three thousand, seven hundred dollars, and of the value of three thousand, seven hundred dollars, *with the intent of influencing him in the performance of an act relating to the functions of his office[,] to wit: a vote on an application for building height variance ....*

       Count 3 charges Ramsey Agan with the offense of bribery, and once again, in DeKalb County, it alleges that on the 6th day of July, 1987, he did give to DeKalb County Commissioner John Fletcher, a person acting on behalf of DeKalb County, a political subdivision of the State of Georgia, a consideration to which he was not entitled, to wit: a check in the amount of eight hundred dollars, and of the value of eight hundred dollars, *with the purpose of influencing him in the performance of an act relating to the functions of his office, to wit: a vote on an application for a building height variance.*

       Count[ ] 4 charges and accuses Ramsey Agan and Rauf Sarper with the offense of bribery, once again, they alleged that in DeKalb County, on the 21st day of July, 1987, they did give to DeKalb County Commissioner Robert Lanier, a person acting on behalf of DeKalb County, a political subdivision of the State of Georgia, a consideration to which he was not entitled, to wit: a check in the amount of three thousand dollars, of the value of three thousand dollars, *for the purpose of influencing him in the performance of an act relating to the functions of his office, to wit: a vote on an application for a building height variance.*

(emphasis added). Though the indictment does not contain the word "corrupt" or "corruptly," it states repeatedly that an element of the crime alleged is having the purpose or intent to influence the commissioners' decisions on the zoning variance request. Because the indictment repeatedly mentions the specific intent required under Georgia's law of bribery, we doubt that the jury—even before it was charged on the law—would have had the impression that Agan could be convicted of bribery without a finding that he had the purpose of influencing the commissioners' decisions on the zoning variance request.

After reading the indictment, the court instructed the jury on the applicable law. The portions of the court's charge relevant to the intent element were as follows:

       Now, the defendants in this case are charged with a crime against the laws of the State of Georgia. A crime is a violation of a statute in which there is a union and a joint operation of two elements, act and intention.

       Intent is an essential element of any crime. Intent must be proved by the State beyond a reasonable doubt. Intent can be shown in many ways, provided you, the jury, believe that it existed from the proven facts before you. Intent may be inferred from the proven circumstances or by acts and conduct or it may, in your discretion, be inferred when it is the natural and necessary consequence of an act.

       I will charge you that presence, companionship and conduct, before and after the offense, are circumstances which the jury can consider in considering the question of intent.

11

Criminal intent does not mean an intent to violate the law or to violate any particular criminal statute. Criminal intent means simply to intend to commit the act which is prohibited by a statute. Defendants' ignorance of the fact that they were violating a law does not relieve them of criminal intent, if they intended to do the act which the legislature by law has prohibited.

No defendant will be presumed to act with criminal intent, but you can fund such intention, or the absence thereof, upon a consideration of the words, the conduct, the demeanor, the motive and the other circumstances connected with the act for which the defendant is being prosecuted.

Now, you may infer in this case, if you wish to do so, that the acts of a person of sound mind and discretion are the product of his will. You may also infer, if you wish to do so, that a person of sound mind and discretion intends the natural and probable consequences of his act.

Whether you make any such inference or inferences in this case is a matter solely with the discretion of the jury....

As you know, the defendants in this case are charged with the offense of bribery. Let me go over with you the Georgia Law, the definition which will contain the elements that must be proven by the State beyond a reasonable doubt for a conviction as to the kind of bribery. Under Georgia Law a person commits bribery when he gives or offers to give to any person acting for or on behalf of the State or any political subdivision thereof, any benefit, reward or consideration to which he is not entitled, with the purpose of influencing him in the performance of any act related to the function of his office or employment.

Now, the word "entitled" does not have any specific or extraordinary or particular legal terminology or definition. I will charge you the word "entitled" means to give a deed or title to.

I will further charge you that the DeKalb County Board of Commissioners serve DeKalb County and DeKalb County is a political subdivision of the State of Georgia.

Now, there is in Georgia Law an Act which is known as the Ethics in Government Act. This Act, among other things, discusses campaign contributions. Let me define for you, under the Ethics in Government Act, the definition of a campaign contribution. Now, for the purpose of this case, there are certain other elements of the definition which are not material. It is a rather long definition and it will be very confusing. What I have done is taken the relevant sections, the sections that I think are necessary for you to understand in your consideration of this case: A campaign contribution means a gift, an advance or deposit of money or anything of value, conveyed or transferred, for the purposes of influencing the nomination for election or election of any person for office.

I will further charge you that a campaign contribution, as I have just defined for you, can be made directly to the candidate.

Now, I will further charge you that under Georgia Law campaign contributions can be made for use in future campaigns for elective office.

In this regard, and in light of the instructions I have given you earlier, I will tell you that it is not the use to which the money may be put, but it is the purpose for which the money was paid that controls.

Although less than perfect, the jury charge did focus on the key question before the jury: Agan's intent in giving money to the commissioners. The jury was told that the defendants' guilt depended on "the purpose for which the money was paid." The court clearly stated that it is not illegal to make campaign contributions directly to a candidate for future campaigns, but it is illegal to give money for the purpose of influencing an official act. Those instructions accurately described Georgia law on intent and drew the distinction between illegal and legal conduct that was necessary to protect Agan's rights.

Admittedly, the jury charge could have been more precise. It appears that at the beginning of deliberations, some members of Agan's jury, though knowing that their task was deciding the intent of Agan and his co-defendant, Rauf Sarper, did not completely understand what constitutes an unlawful intent. During deliberations, the jury submitted a question to the court regarding the question of intent as to Rauf Sarper. That question gave the trial court another opportunity to draw the line between legal and illegal intent with regard to donating money to officials. If nothing else made the issue clear enough for the jury, this additional instruction sufficed:

> [Y]ou wish to know whether the intent element of that is an intent to specifically influence the vote on the height variance. I assume that is your question. Is that correct? All right.

> Well, let me recharge you generally on what the law is as to intent. You recall when I charged you on intent I said intent is an essential element of any crime. Intent must be proved by the State beyond a reasonable doubt. Now, intent can be shown in many ways, provided you, the jury, believe that it existed from the proven facts before you and can be inferred from proven circumstances or by acts and conduct or it may be, in your discretion, inferred when it is the natural and necessary consequence of the act.

> Now, criminal intent does not mean the intent to violate the law or to violate any particular criminal statute. Criminal intent means simply to intend to commit the act which is prohibited by the statute....

> Now, I will further charge you—you have a copy of the indictment, but I have a spare copy in the Court's file, and this particular act charges the defendant with being involved in giving to DeKalb County Commissioner Fletcher, a person acting on behalf of DeKalb County, a political subdivision, a consideration to which he was not entitled *with the*

13

*purpose of influencing him in the performance of an act relating to the functions of his office, to wit: a vote on an application for a building height variance.*

Now, under Georgia Law that's known as a specific intent crime. All right. Specific intent crime, they allege in the indictment, that is the purpose for which the defendant gave that money to Commissioner John Fletcher. That's the intent.

So, you will understand that that is the specific intent statute, and the allegations in the indictment on which you have to vote, charges him with *committing these acts with the purpose of influencing Mr. Fletcher in performance of an act relating to the functions of his office, to wit: a vote on an application for a building height variance.*

(emphasis added). That charge explained more clearly than the original instructions had that, in order to find the defendants guilty of bribery, the jury had to find that the defendants had the intent to influence the commissioners on the particular matter of the zoning variance request. We hold that the follow-up charge, combined with the initial charge and the reading of the indictment, made the jury sufficiently aware of the difference between a lawful campaign donation and a bribe. The court framed the issue of intent well enough to satisfy the due process requirements of the Fourteenth Amendment.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Agan makes another claim wholly unrelated to his claims regarding the bribery statute. He contends that he is entitled to habeas relief, because he was denied the right to testify at his trial through the actions of his attorney and the trial court. The denial of his right to testify, Agan argues, stemmed from and amounted to ineffective assistance of counsel. The State argues that this claim is barred by procedural default, and that Agan cannot show cause for that default.

### 1. *Procedural Default*

Agan first raised this issue in his extraordinary motion for a new trial in June 1991. The Georgia trial court held that he had waived the claim as a matter of state law by not asserting it earlier.[4] (Recall that before Agan filed the extraordinary motion for a new trial, he already had

_____

[4]Georgia's general rule for procedural default is as follows:

> [A] failure to make timely objection to any alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus. However, an otherwise valid procedural bar will not preclude a habeas

14

exhausted his direct appeals, he had received an evidentiary hearing on his selective prosecution claim, and he had begun his appeal of the denial of the selective prosecution claim.) In the alternative, the court concluded that the actions of Agan's trial attorney were based on valid tactical considerations and did not constitute ineffective assistance of counsel. The Georgia Court of Appeals declined to exercise discretionary review over the trial court's conclusions.

A state court's determination that a claim is barred from review in state court because of the petitioner's failure to comply with state law procedures for presenting the claim precludes federal habeas review of that claim, unless the petitioner can show both cause for the default and prejudice arising therefrom, *see, e.g., Pitts v. Cook,* 923 F.2d 1568, 1571 (11th Cir.1991), or that the failure to review the claim would result in a miscarriage of justice, *see, e.g., Murray v. Carrier,* 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). Agan contends that he did not procedurally default this claim under Georgia's law. He argues further that, as evidenced by our decision in *Oyola v. Bowers,* 947 F.2d 928 (11th Cir.1991), we have an obligation on habeas review to apply Georgia's rules on procedural default "correctly," by which he means that we can and should correct the Georgia court's misunderstanding of its own law of procedural default. That argument flies in the face of the fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See, e.g., Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Hays v. Alabama,* 85 F.3d 1492, 1500 (11th

---

corpus court from considering alleged constitutional errors or deficiencies if there shall be a showing of adequate cause for failure to object or to pursue on appeal and a showing of actual prejudice to the accused. Even absent such a showing of cause and prejudice, the relief of the writ will remain available to avoid a miscarriage of justice where there has been a substantial denial of constitutional rights.

*Black v. Hardin,* 255 Ga. 239, 336 S.E.2d 754, 755 (1985). Georgia's specific rule for raising ineffective assistance of counsel claims was announced in *Thompson v. State,* 257 Ga. 386, 359 S.E.2d 664, 665 (1987). There, the Georgia Supreme Court held that new counsel must raise the issue "at the earliest practicable moment," or it will be deemed waived. *Id.* at 665; *see also Clair v. State,* 216 Ga.App. 414, 454 S.E.2d 556, 557 (1995).

Cir.1996) ("Petitioner is due no relief on the grounds that Alabama has misinterpreted its own law."), *cert. denied,* --- U.S. ----, 117 S.Ct. 1262, 137 L.Ed.2d 341 (1997).

Our decision in *Oyola* is not to the contrary, as a close examination of the procedural facts of that case reveals. In 1986, Oyola was tried in Georgia for trafficking in cocaine. *See* 947 F.2d at 929. Before the trial court instructed the jury on the applicable law, it held a jury instruction conference. During that conference, Oyola's attorney did not object to instructions which failed to differentiate between actual and constructive possession of cocaine. *See id.* at 929-30. After the jury charge was given, Oyola's attorney objected on that ground, but the objection was overruled, and Oyola was convicted. *See id.* Oyola's new counsel on appeal did not raise any issue regarding the jury charge or the ineffectiveness of prior counsel. *See id.* at 930.

In 1988, the Georgia Supreme Court issued *Lockwood v. State,* 257 Ga. 796, 364 S.E.2d 574 (1988), which made clear that the jury charge in Oyola's case was erroneous. *See* 947 F.2d at 930. Oyola sought state habeas relief based on the *Lockwood* case, arguing that he had been denied effective assistance of counsel when his trial attorney failed to object in the jury instruction conference. *See id.* The state habeas court found Oyola had defaulted the ineffective assistance of counsel claim by not raising it during his direct appeal. *See id.* Oyola then sought federal habeas relief. The district court concluded that Oyola's counsel had been ineffective, but denied Oyola's petition on the ground of procedural default. *See id.* at 931. While Oyola's appeal was pending in this Court, the Georgia Supreme Court decided *Scott v. Hernandez-Cuevas,* 260 Ga. 466, 396 S.E.2d 900 (1990), which considered a state habeas claim of ineffective assistance of counsel materially identical to Oyola's. In *Hernandez-Cuevas,* the Georgia Supreme Court held that because of its novelty, the petitioner in that case should not be charged with procedural default of the *Lockwood* claim. *See* 396 S.E.2d at 900. The court also held that the *Lockwood* decision applied retroactively. *See id.* In effect, the Georgia Supreme Court in *Hernandez-Cuevas* decided that the state trial court's earlier procedural default holding in Oyola's case was wrong.

16

We concluded in *Oyola* that we were obligated to honor the *Hernandez-Cuevas* decision by treating Oyola's claim the same way the Georgia Supreme Court had treated Hernandez-Cuevas' claim. See 947 F.2d at 931-32. We recognized that principles of comity and federalism induce us to defer to a state court's finding of procedural default in the case that led to the habeas proceedings. However, in Oyola's case, the intervening *Hernandez-Cuevas* decision overrode that consideration and required us to reject the finding of default in order to give effect to the most recent pronouncement on the issue by the state supreme court. *See id.* To have done otherwise would have been to follow a state trial court decision instead of a state supreme court decision on the point at issue. Of course, the latest holding of a state supreme court trumps any prior contrary holdings of lower state courts. *See, e.g., Blue Cross and Blue Shield v. Nielsen,* 116 F.3d 1406 (11th Cir. 1997) ("The final arbiter of state law is the state supreme court....").

Contrary to what Agan contends, we did not hold or even suggest in *Oyola* that, in cases where there has been no intervening state supreme court decision on procedural default, we should afford less than the usual deference to the state trial court's or state appellate court's determination of default. The *Oyola* decision only applies in the rare circumstance where an intervening state supreme court decision inescapably establishes that a lower court's prior procedural default holding was wrong. As we explained in that decision, principles of "[c]omity, federalism, and effective operation of the intertwined state and federal systems tell us not to shut our eyes and ears to what Georgia has told us." 947 F.2d at 932. In *Oyola,* the Georgia courts had told us, through an intervening Georgia Supreme Court decision, that Oyola did not default on his claim. In Agan's case, a Georgia court held that he defaulted, and there has been no intervening Georgia Supreme Court decision to the contrary. Accordingly, we follow what the Georgia court said in this petitioner's case about how the Georgia law of procedural default applies to him.

### 2. *Cause for Default*

Agan did not raise his ineffective assistance claim when he was before the state trial court on remand in November and December of 1990. Instead, he waited until June of 1991, at which

17

time he instituted a different proceeding by filing his extraordinary motion for new trial. The failure to raise the claim earlier is the procedural default the state habeas court enforced against him. As cause to excuse his procedural default, Agan asserts the novelty of this ineffective assistance claim. He argues that, because this Court did not consider the denial of the right to testify caused by an attorney to be ineffective assistance of counsel until 1992, he was not obligated to raise that claim earlier than he did.

Cause may be established upon a demonstration that a constitutional claim is "so novel that its legal basis is not reasonably available to counsel." *Dugger v. Adams,* 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989) (citation omitted). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was "available' at all." *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). We agree with the district court that it was. By August of 1990, this Court had held explicitly that defendants have a right to testify, guaranteed by the Fifth, Sixth, and Fourteenth Amendments, which may not be waived by counsel. *See United States v. Scott,* 909 F.2d 488, 490 (11th Cir.1990). Even before that time, there were at least indications, although no direct holdings, that such was the law of this circuit. *See Wright v. Estelle,* 572 F.2d 1071, 1072 (5th Cir.1978); *Winters v. Cook,* 489 F.2d 174, 179-80 (5th Cir.1973). In November and December 1990, Agan was at the trial level of the state courts pursuing his selective prosecution claim. He had the benefit of our *Scott* decision at that time, and he should have raised the claim as a Fifth, Sixth, and Fourteenth Amendment claim in that proceeding at the latest.

Agan contends that he was not required to raise this issue before he filed his extraordinary motion for a new trial in June of 1991, because this Court did not hold until 1992 that a claim an attorney denied his client's right to testify should be considered as a denial of effective assistance of counsel, as distinguished from, or in addition to, a violation of any other constitutional guarantee. *See United States v. Teague,* 953 F.2d 1525, 1534 (11th Cir.1992). This argument is meritless. Agan could have argued that he was unconstitutionally denied the right to testify before *Teague* held

18

that, in certain circumstances, that claim would be considered an ineffective assistance claim. Besides, Agan *did* assert the claim as an ineffective assistance of counsel claim before *Teague* was decided, which proves that the specific claim was available to him before *Teague* was decided. Agan should have asserted the claim immediately after *Scott* was decided in August 1990 or, at the latest, when he was before the state trial court in November and December of 1990. Agan has failed to establish any cause for his procedural default of this claim.

### IV. CONCLUSION

We AFFIRM the district court's denial of Agan's petition for a writ of habeas corpus.