William G. WARD, d.b.a. Bourbon Street South, Plaintiff-Appellant,

v.

COUNTY OF ORANGE, Defendant-Appellee.

No. 99-11283.

United States Court of Appeals,

Eleventh Circuit.

July 13, 2000.

Appeal from the United States District Court for the Middle District of Florida. 9no. 98-00428-CIV-ORL-19), Patricia C. Fawsett, Judge.

Before ANDERSON, Chief Judge, and BLACK and HALL[*], Circuit Judges.

BLACK, Circuit Judge:

Appellant William G. Ward appeals the district court's grant of summary judgment on Appellant's constitutional challenges. On appeal, Appellant claims the district court erred in finding in favor of Appellee County of Orange on its facial challenges and erred in dismissing its as-applied challenges. We conclude the district was correct in granting summary judgment with respect to the facial challenges but remand with instructions the as-applied challenges.

## I. BACKGROUND

Appellant William G. Ward is the owner of a "swimsuit club" operating under the name Bourbon Street South (BSS). At BSS, customers can purchase "Sweetheart Party Packages," ranging in price from $20 to $200. These packages give customers access to, among other things, nonalcoholic beverages and slow dances with BSS performers. While Appellant claims BSS is no different than other dance studios, Appellee presented extensive evidence showing that BSS differed significantly from traditional dance studios.

For example, one affidavit explained that BSS performers "simulated or actually engaged in masturbation of themselves or displayed their buttocks, genitals, or breasts." The affidavit further noted BSS performers "would rub their bodies against their male customers, press their genitals against those of the

---

[*]Honorable Cynthia Holcomb Hall, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

customers ... allow the customers to fondle their buttocks and exposed back ... and often times would place their hands underneath the customers' shirt or fondle the customer's buttocks." Further evidence showed BSS performers often revealed their body parts to customers.

As a result of such conduct, several performers and a manager at BSS, but not Appellant, were arrested for violations of Orange County's Adult Entertainment Code (the code).[1] The code reads, in pertinent part, as follows:

Adult performance establishment shall mean as follows:

(1) An establishment where any worker:

a. Engages in a private performance, acts as a private model, or displays or exposes any specified anatomical areas to a customer;

b. Wears and displays to a customer any covering, tape, pastie, or other device which simulates or otherwise gives the appearance of the display or exposure of any specified anatomical areas;

c. Offers, solicits or contracts to dance or perform with a customer in consideration for or accepts any tip, remuneration or compensation from or on behalf of that customer;  or

d. Dances or performs with or within three (3) feet of a customer in consideration for or accepts any tip, remuneration, compensation from or on behalf of that customer.

Orange County Adult Entertainment Code, § 3-6. Operations deemed to be adult performance establishments, as defined in the code, must obtain an adult entertainment license and must conform to the zoning requirements contained in sections 3-76 through 3-78 of the code.

Appellant has never applied for an Orange County adult entertainment license. Furthermore, Appellee has never cited Appellant or BSS for a violation of the code and has never held a code enforcement proceeding against Appellant or BSS. Finally, Appellee has never filed a lawsuit seeking to enjoin actions by Appellant or BSS in violation of the code.

---

[1]The performers and manager were arrested for, among other things, operating without an adult entertainment license.

Appellant brought suit against Appellee claiming the code is unconstitutional on its face and as-applied. Among other things, Appellant claimed the code was overbroad, content-based, vague, unrelated to a legitimate state interest, and unconstitutionally shifted the burden of proof. Appellant also argued the code was unconstitutionally applied to BSS. The district court granted summary judgment for Appellee on the facial challenges and determined Appellant's as-applied challenges were not ripe. We affirm the district court with respect to the facial challenges but remand with instructions the as-applied challenges.

## II. ANALYSIS

We review de novo the district court's entry of summary judgment. *See AT&T Wireless PCS, Inc. v. City of Atlanta,* 210 F.3d 1322, 1324 (11th Cir.2000). In assessing a motion for summary judgment, "we must examine the evidence in the light most favorable to the non-moving party." *Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1365 (11th Cir.2000). Summary judgment is appropriate if there are no genuine issues of material fact. *See id.*

A.     *Facial Challenges*

1.     *City of Renton Test*

We review Appellee's zoning ordinance in this case under the "time, place, or manner" standard set forth by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). *See Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1361 (11th Cir.1999), *cert. denied,* --- U.S. ----, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). Under this standard, a "zoning ordinance is valid if it is narrowly tailored to serve a substantial government interest, and it allows for reasonable alternative avenues of expression." *Id.*

Appellant's main contention is that the zoning ordinance does not serve a substantial governmental interest. Appellant argues the zoning ordinance regulates pure speech and other expressive forms of conduct and therefore violates the First Amendment. We disagree.

**3**

The Supreme Court consistently has held that combating the harmful secondary effects of adult businesses, such as increased "crime and other public health and safety problems," is a substantial interest. *City of Erie v. Pap's A.M.,* --- U.S. ----, 120 S.Ct. 1382, 1397, 146 L.Ed.2d 265 (2000); *see City of Renton,* 475 U.S. at 50, 106 S.Ct. at 930 (stating that "a city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect") (internal quotation omitted). Significantly, the Court stated that although the "regulation may have some incidental effect on the expressive element of the conduct ... [t]he State's interest in preventing harmful secondary effects is not related to the suppression of expression." *Pap's,* 120 S.Ct. at 1393. The Court added that it "will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive." *Id.* at 1392-93. Finally, we have noted "it is not difficult to draft an ordinance that addresses the harmful secondary effects of adult businesses without running afoul of the First Amendment." *Lady J. Lingerie,* 176 F.3d at 1363.

In this case, the zoning ordinance was intended, at least in part, to combat the negative secondary effects of adult establishments. Appellee relied on numerous studies and hearings to show that the presence of adult entertainment establishments is associated with negative secondary effects. Although several of these studies were conducted by different cities, the Supreme Court has made it clear that "the city need not conduct new studies or produce evidence independent of that already generated by other cities to demonstrate the problem of secondary effects, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Pap's,* 120 S.Ct. at 1395 (internal quotations omitted). Furthermore, Appellee conducted at least one public hearing that specifically examined the secondary effects of Appellant's establishment. Therefore, even assuming, as Appellant alleges, this ordinance incidentally reaches some forms of protected expression, the ordinance is a valid time, place, or manner regulation under

**4**

*City of Renton* because it is aimed at combating the harmful secondary effects associated with adult entertainment establishments.[2]

2.      *Burden-Shifting*

Appellant also contends the ordinance unconstitutionally places on the applicant the burden of proving that the "predominant business or attraction of the establishment" is not "intended to provide sexual stimulation or sexual gratification."[3]

The starting point for the burden-shifting analysis is the Supreme Court's decision in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In *Freedman,* the Court discussed the

---

[2]Appellant does not dispute that the ordinance is narrowly tailored and leaves open reasonable alternative avenues of expression.

[3]Section 3-6(2) of the code provides as follows:

> This definition is not intended to apply, and it is an affirmative defense to an alleged violation of this chapter regarding operating an adult performance establishment without a license, if the alleged violator demonstrates either (a) that the establishment is a bona fide private club whose membership as a whole engages social nudism or naturalism as in a nudist resort or camp, or (b) that the predominant business or attraction of the establishment is not the offering to customers of a product, service, or entertainment which is intended to provide sexual stimulation or sexual gratification to such customers, and the establishment and its advertising is not distinguished by an emphasis on, or the promotion of, matters or persons depicting, describing, displaying, exposing, stimulating or relating to specified sexual activities or specified anatomical areas.

"Sexual stimulation" is defined as

> either to excite or arouse the prurient interest or to offer, propose, solicit, or suggest to provide an act of sexual gratification to a customer, including but not limited to all conversations, statements, advertisements and acts which would lead a reasonable person to conclude that an act of sexual gratification was to be provided.

"Sexual gratification" is defined as

> the engaging in or committing of an act of sexual intercourse, oral-genital contact, masturbation, or the touching of the covered or uncovered sexual organ, pubic region, buttock, breast, chest or inner thigh of a person, any of which is for the purpose of arousing or gratifying the sexual desire of another person.

**5**

procedural safeguards required for the administration of a motion picture censorship system. *See Freedman,* 380 U.S. at 56-61, 85 S.Ct. at 737-40. The Court noted censorship is "always fraught with danger and viewed with suspicion," and therefore mandated the following safeguards: (1) the burden of proving the film is unprotected by the First Amendment must be placed on the censor; (2) any restraint prior to judicial review may only be imposed for a specified brief period of time during which the status quo must be maintained; and (3) the final judicial decision must be prompt. *Id.* at 57-59, 85 S.Ct. at 738-39.

Subsequently, in *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Supreme Court addressed whether a licensing scheme regulating adult entertainment establishments must contain the same procedural safeguards. In a plurality opinion, Justice O'Connor noted "[t]he core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." *FW/PBS,* 493 U.S. at 228, 110 S.Ct. at 606. As such, the plurality concluded a licensing scheme must provide the second and third safeguards required by *Freedman. See id.*

In discussing the first safeguard, however, the plurality emphasized the differences between a censorship scheme and a licensing scheme. Specifically, the plurality noted a censorship scheme is presumptively invalid because it is a direct suppression of expressive material. *See id* at 229, 110 S.Ct. at 607. In contrast, under a licensing scheme, a "city does not exercise discretion by passing judgment on the content of any protected speech. Rather, the city reviews the general qualifications of each license applicant, a ministerial action that is not presumptively invalid." *Id.*

Furthermore, the plurality reasoned that license applicants have much more at stake than motion picture distributors: "[b]ecause the license is the key to the applicant's obtaining and maintaining a business, there is every incentive for the applicant to pursue a license denial through court." *Id.* at 229-30, 110 S.Ct. at 607. Motion picture distributors, however, are more likely to be deterred from challenging a censorship decision and thus a "censor's decision to suppress [speech] was tantamount to complete suppression of the

**6**

speech." *Id.* at 229, 110 S.Ct. at 607. Because of these distinctions, the *FW/PBS* plurality concluded that the first procedural safeguard from *Freedman* did not apply in the licensing context. *See id.* Thus, a city may require the license applicant to bear the burden of proving that it is engaging in protected activity.

While a majority of the Supreme Court has failed to join Justice O'Connor in recognizing these distinctions, we have explicitly noted the significant differences between censorship schemes and licensing schemes. *See Boss Capital, Inc. v. Casselberry,* 187 F.3d 1251 (11th Cir.1999), *cert. denied,* --- U.S. ----, 120 S.Ct. 1423, 146 L.Ed.2d 315 (2000). In *Boss Capital,* this Court addressed the related issue of whether *Freedman* and *FW/PBS* require a guarantee of a prompt judicial resolution of license denials or merely a guarantee of a prompt judicial review.[4] *See id.* at 1255. While recognizing that *Freedman* "unmistakably requires a prompt final judicial decision" in a censorship scheme, this Court emphasized that licensing decisions are inherently different from censorship decisions. *Id.* at 1256 (internal quotation omitted). We therefore concluded licensing schemes need only provide prompt judicial review of licensing denials. *See id.* at 1256-57.

Once again, it is important to stress the differences between censorship schemes and licensing schemes—"[t]he dangers of censorship are less threatening when it comes to licensing schemes." *Id.* at 1256. And, again, "[w]e believe this is a situation for 'treating unlike things differently according to their differences.'" *Id.* (quoting *Lyes v. City of Riviera Beach,* 166 F.3d 1332, 1342 (11th Cir.1999) (en banc)). Accordingly, we conclude a city may place the burden of proving that the "predominant business or attraction of the establishment" is not "intended to provide sexual stimulation or sexual gratification" on the applicant. *See Steakhouse, Inc. v. City of Raleigh,* 166 F.3d 634, 640-41 (4th Cir.1999) (holding a city may place the burden of "proving no adverse secondary effects on the applicant"); *Florida Video Xpress, Inc. v. Orange*

---

[4]This question, which has divided the Circuits, arises from Justice O'Connor's statement that "there must be the possibility of prompt judicial review in the event that [a] license is erroneously denied." *FW/PBS,* 493 U.S. at 228, 110 S.Ct. at 606. As noted above, in *Freedman,* the Supreme Court had required a "prompt final judicial decision." *Freedman,* 380 U.S. at 59, 85 S.Ct. at 739.

*County,* 983 F.Supp. 1091, 1098 (M.D.Fla.1997) (concluding an adult entertainment code may shift the burden to a business to prove that it is not an adult entertainment establishment).

3.      *Overbreadth*

An ordinance is unconstitutionally overbroad "when lawmakers define the scope of a statute to reach both unprotected expression as well as, at least potentially, protected speech." *American Booksellers v. Webb,* 919 F.2d 1493, 1502 (11th Cir.1990). We will consider an ordinance to be facially invalid under the First Amendment only if it is "substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases." *Agan v. Vaughn,* 119 F.3d 1538, 1542 (11th Cir.1997).

Appellant has failed to show the application of the ordinance would be unconstitutional in a substantial proportion of cases. Therefore, the district court was correct in granting summary judgment for Appellee on this claim.[5]

B.      *As-Applied Challenges*

Appellant contends the district court erred in concluding its as-applied challenges were not ripe. In order for an as-applied challenge against a county to be ripe, a county official "with sufficient authority must have rendered a decision regarding" the party's proposal. *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 590 (11th Cir.1997). Furthermore, "[w]ithout the presentation of a binding conclusive administrative decision, no tangible controversy exists and, thus, we have no authority to act." *Id.* We simply have "neither the power nor the inclination" to resolve a potential dispute founded only on a party's belief that a county would interpret an ordinance in such a way as to violate the party's First Amendment rights. *Id.* at

---

[5]Appellant also argues the terms "sexual gratification" and "sexual stimulation," as used in the ordinance, are unconstitutionally vague. We, however, have already held that a similar term is not unconstitutionally vague. *See Stansberry v. Holmes,* 613 F.2d 1285, 1289 (5th Cir.1980). This case is binding on this Court pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), in which this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. The district court therefore did not err in granting summary judgment on this claim.

591. However, a party need not seek a binding conclusive administrative decision where such an effort would be futile. *See Eide v. Sarasota County,* 908 F.2d 716, 726 (11th Cir.1990).

Thus, in the typical case, Appellant's as-applied challenge would be ripe only if Appellant had applied for a license or if Appellant demonstrated an application would have been futile. At first glance, it therefore appears Appellant has not presented this Court with a ripe controversy, as it has failed to apply for a license and has failed show it would have been futile to do so. This, however, is not the typical case. In this case, Appellant is not seeking a license. Rather, Appellant contends it is not an adult entertainment establishment as defined in the code. Appellant therefore asserts it is not required to apply for a license.

In their briefs, the parties did not address whether, before bringing the as-applied challenges, Appellant applied to the zoning board to determine whether it needed a license to operate BSS. The panel, and we presume the district court, assumed this procedure was available to Appellant. However, when asked at oral argument, counsel for Appellee, perhaps unprepared to answer the question, did not affirmatively state that such a mechanism existed and seemed to suggest the only way for Appellant to ripen this case was to apply for a license. As it is obviously illogical to force Appellant to apply for a license it repeatedly argues it does not need, the ripeness of the as-applied claim depends on whether Appellant could have obtained from the zoning board a determination whether BSS needed a license. If a procedure exists, the as-applied challenges are not ripe, as Appellant has failed to show that a county official with sufficient authority rendered a decision regarding BSS. If, however, a procedure does not exist, we conclude Appellant's as-applied challenges are ripe and would need to be considered by the district court. We therefore remand the as-applied challenges to the district court to determine whether Appellant could have sought a ruling from the zoning board as to whether Appellant was required to obtain a license for BSS.

### III. CONCLUSION

We affirm the district court's grant of summary judgment on Appellant's facial constitutional challenges but remand with instructions the as-applied challenges.

AFFIRMED IN PART and REMANDED IN PART.