United States Court of Appeals,

Eleventh Circuit.

No. 95-6776.

Brian Keith BALDWIN, Petitioner-Appellant,

v.

Willie JOHNSON, Respondent-Appellee.

Sept. 1, 1998.

Appeal from the United States District Court for the Southern District of Alabama. (No. 91-0390-RV-M), Richard Vollmer, Jr., Judge.

Before HATCHETT, Chief Judge, and EDMONDSON and COX, Circuit Judges.

HATCHETT, Chief Judge:

Appellant Brian Baldwin challenges the district court's denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and the court's failure to conduct an evidentiary hearing. We affirm.

I. BACKGROUND

*A. Direct Appeal*

On August 9, 1977, a jury in the Circuit Court of Monroe County, Alabama, convicted Baldwin of the capital felony of robbery during which the victim was intentionally killed, in violation of section 13-11-2(a)(2) of the 1975 Alabama Code.[1] After holding a separate hearing, the court sentenced Baldwin to death. On October 3, 1978, the Alabama Court of Criminal Appeals affirmed Baldwin's conviction and sentence. *See Baldwin v. State,* 372 So.2d 26 (Ala.Crim.App.1978). On direct appeal, Baldwin contended that the State of Alabama did not have

---

[1]For a recitation of the underlying facts, see *Baldwin v. State,* 372 So.2d 26, 26-27 (Ala.Crim.App.1978).

jurisdiction to try him where the charged offense, robbery, occurred in North Carolina, while only the aggravating circumstance of intentionally killing the victim occurred in Alabama. Pursuant to its "statutory duty to search the entire record for error[,]" the court also addressed, among other things, (1) whether Baldwin's confessions were knowingly and voluntarily made; and (2) whether the aggravating circumstances of the offense outweighed the mitigating circumstances to warrant the death penalty. 372 So.2d at 28. On June 1, 1979, the Supreme Court of Alabama affirmed the judgment of the court of criminal appeals, addressing only the jurisdiction issue. *See Baldwin v. State (Ex parte Baldwin),* 372 So.2d 32 (Ala.1979). On June 30, 1980, the United States Supreme Court granted Baldwin's petition for writ of certiorari, vacated the Supreme Court of Alabama's affirmance and remanded the case for further consideration in light of *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). *See Baldwin v. Alabama,* 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980).[2] The Supreme Court of Alabama, in turn, remanded the case to the Alabama Court of Criminal Appeals with directions to consider *Beck. See Baldwin v. State (In re Baldwin),* 405 So.2d 698 (Ala.1981). The court of criminal appeals reversed Baldwin's conviction without opinion. *See Baldwin v. State,* 405 So.2d 699 (1981).

After the Supreme Court's decision in *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the court of criminal appeals granted the state's request for rehearing, vacated its previous reversal and affirmed Baldwin's conviction and sentence. *See Baldwin v. State,* 456

---

[2]In *Beck,* the Supreme Court held that a court may not constitutionally impose a death sentence after a jury renders a guilty verdict for a capital crime where the jury was precluded from considering a verdict of guilty for a lesser included offense. *See Beck,* 447 U.S. at 645-46, 100 S.Ct. 2382.

So.2d 117 (Ala.Crim.App.1983).[3] On rehearing, the court of criminal appeals concluded, among other things, that (1) the trial court properly considered Baldwin's conviction under North Carolina's youthful offender statute as an aggravating circumstance, but unmistakably erred in considering his delinquency adjudication as an aggravating circumstance; (2) the aggravating circumstances far outweighed the only mitigating factor, Baldwin's age at the time of the offense; (3) the sentencing judge did not impose the sentence under the influence of any passion or prejudice or for an arbitrary reason; and (4) death sentences had been imposed in Alabama in similar cases. 456 So.2d at 124-28.[4]

On July 13, 1984, the Supreme Court of Alabama affirmed the judgment of the Alabama Court of Criminal Appeals on the rehearing issues. *See Baldwin v. State (Ex parte Baldwin),* 456 So.2d 129 (Ala.1984). In addition, the court rejected Baldwin's challenge to the sentencing provisions of Alabama's 1975 death penalty statute as unconstitutional. The court also "reviewed the entire record of the trial proceeding and [found] no error which "ha[d] or probably ha[d] adversely affected the substantial rights of the petitioner.' " 456 So.2d at 137 (quoting Ala. R.App. P. 39(k)).

On December 10, 1984, the Supreme Court granted Baldwin's petition for writ of certiorari, and on June 17, 1985, affirmed the judgment of the Supreme Court of Alabama. *See Baldwin v. Alabama,* 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984) (granting certiorari review); 472

---

[3]The *Hopper* Court held that the jury must be permitted to consider a verdict of guilty for a lesser included offense only when the evidence would have supported such a verdict. *See Hopper,* 456 U.S. at 613, 102 S.Ct. 2049.

[4]The court, however, determined that the trial court's error in considering the delinquency adjudication was harmless "when viewed in light of the other aggravating circumstances in this case." 456 So.2d at 127.

U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985) (affirming Baldwin's conviction and sentence). In so holding, the Supreme Court upheld the constitutionality of Alabama's death penalty statute, which required jurors to "fix the punishment at death" once they found a defendant guilty of a capital offense. Ala.Code § 13-11-2(a) (1975); *see also Baldwin,* 472 U.S. at 389, 105 S.Ct. 2727. Additionally, the Court noted that although Baldwin asserted in his statement of facts that the sentencing judge limited his consideration of mitigating circumstances to those specified in section 13-11-7 of the Alabama Code, in violation of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), "[t]hat issue was not addressed by the Supreme Court of Alabama in the decision under review, and was not raised in the petition for certiorari." 472 U.S. at 381 n. 7, 105 S.Ct. 2727. Thus, the Court had "no reason to consider the issue...." 472 U.S. at 381 n. 7, 105 S.Ct. 2727.

*B. State Collateral Review*

On October 23, 1985, Baldwin filed a petition for writ of error coram nobis and/or motion for relief from judgment in the Circuit Court of Monroe County, Alabama. On October 2, 1987, the circuit court denied Baldwin's petition, finding that Baldwin was procedurally barred from presenting the following claims because he failed to raise them at trial or on direct appeal: (1) Alabama's death penalty statute was unconstitutional because the death penalty was "mandatory"; (2) the death penalty was applied in a discriminatory manner against defendants on the grounds of race, gender and poverty, in general and in Baldwin's case; (3) Alabama's death penalty statute and practices provided no standards for determining the burden of proof and persuasion in capital cases; (4) the state's appellate review of death sentences was inadequate because it did not provide for a comparative review, and was arbitrary and without governing standards; (5) electrocution was an

unnecessary and cruel means of execution;  (6) the death penalty was excessive;  (7) Baldwin's jury did not constitute a representative cross-section of the community under the Sixth Amendment because potential jurors with religious principles against capital punishment were systematically excluded;  (8) Baldwin's jury did not reflect a representative cross-section of the community in violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses;  (9) Baldwin's jury was "unrepresentative and biased in favor of the prosecution on the issue of [his] guilt";  (10) his constitutional rights were violated because an improperly impaneled grand jury of all white persons indicted him;  and (11) the prosecutor violated his constitutional rights when he used his peremptory strikes to remove all black potential jurors from Baldwin's petit jury.  The court found that Baldwin could not raise the following claims in his petition for writ of error coram nobis because the Alabama appellate courts decided them on direct appeal:  (1) the jury's inability to consider lesser included offenses denied Baldwin due process of law and violated *Beck;*  (2) under the facts of this case, the death penalty was disproportionately severe;  and (3) the death penalty statute had been generally, and in this case, arbitrarily and capriciously applied.  In addition, after conducting an evidentiary hearing, the court denied Baldwin's ineffective assistance of counsel claim on the merits.[5]

---

[5]Baldwin contended that he received ineffective assistance because his trial counsel failed to: (1) request a psychiatric examination;  (2) move to change venue;  (3) hire expert witnesses to assist in the preparation and presentation of a defense concerning the effects of drugs and alcohol on Baldwin;  (4) question the potential jurors more extensively at voir dire and request that the court individually question the jurors as to their beliefs about capital punishment;  (5) prepare Baldwin for, and present mitigating evidence at, the sentencing hearing;  (6) move to recuse all elected Alabama judges;  (7) challenge the composition of the all white grand jury that indicted Baldwin;  and (8) move for a mistrial and/or object to the state's use of its peremptory strikes to remove all black potential jurors from the petit jury.

5

On October 28, 1988, the court of criminal appeals affirmed the denial of Baldwin's coram nobis petition. *See Baldwin v. State,* 539 So.2d 1103 (Ala.Crim.App.1988). The court summarily affirmed the lower court's findings that some of Baldwin's claims were procedurally barred. 539 So.2d at 1104-05. The court then quoted the lower court's opinion on the ineffective assistance of counsel claim and adopted that opinion as its own. 539 So.2d at 1105-09. The Supreme Court of Alabama denied Baldwin a writ of certiorari on March 3, 1989, and the United States Supreme Court denied certiorari review on October 2, 1989, bringing Baldwin's state collateral attack of his conviction and sentence to a close. *See Baldwin v. State,* 539 So.2d 1103 (Ala.1989); *Baldwin v. Alabama,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989).

*C. Federal Habeas Corpus Review*

On May 20, 1991, Baldwin filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Alabama. On October 29, 1991, he filed a second superseding petition; that petition, as supplemented, serves as the focus of this case. The district court declined to conduct an evidentiary hearing because it found that Baldwin's allegations concerning cause and prejudice for his defaulted claims were conclusory and that the record did not support them, and the underlying facts of his ineffective assistance claim were fully developed in the state court. The district court thereafter denied Baldwin's petition in a 177-page order, concluding that many of Baldwin's 43 claims were procedurally barred, and that the remaining claims did not warrant relief on the merits.

## II. DISCUSSION

Baldwin's issues on appeal include an ineffective assistance of counsel claim and substantive challenges to alleged trial errors. Because we conclude that Baldwin is not entitled to relief on the

6

merits of some of his claims and has procedurally defaulted the remaining claims, we affirm the district court's denial of his petition for writ of habeas corpus. We address each of Baldwin's issues in turn.

*A. Ineffective Assistance of Counsel*

Baldwin contends that the state violated his right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution when he received ineffective assistance at trial, at sentencing and on direct appeal. An ineffective assistance of counsel claim presents a mixed question of law and fact, which we review *de novo. Huynh v. King,* 95 F.3d 1052, 1056 (11th Cir.1996). To obtain relief on this claim, Baldwin bears the burden of demonstrating that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different." *Huynh,* 95 F.3d at 1056 (citing *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We determine the reasonableness of Baldwin's counsel's performance through a deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); *Huynh,* 95 F.3d at 1056. In addition, a "reasonable probability" is a probability "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. With regard to showing prejudice as a result of his trial counsel's sentencing errors, Baldwin must prove that but for his counsel's deficient performance, "a reasonable probability [existed] that the balance

7

of aggravating and mitigating circumstances would have been different." *Horsley v. Alabama,* 45 F.3d 1486, 1493 (11th Cir.), *cert. denied,* 516 U.S. 960, 116 S.Ct. 410, 133 L.Ed.2d 328 (1995).

Although Baldwin raises numerous grounds for his ineffective assistance of counsel claim, we address on the merits only those grounds that Baldwin alleged in his petition for writ of error coram nobis and again in the district court. The remaining claims are procedurally barred. *See Footman v. Singletary,* 978 F.2d 1207, 1211 (11th Cir.1992) ("[A] habeas [corpus] petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.").[6] During his state coram nobis proceeding and in the district court, Baldwin asserted that his trial counsel rendered constitutionally deficient performance in failing: (1) to challenge the racial composition of the grand jury that indicted Baldwin; (2) to request a change of venue; (3) to challenge the prosecutor's use of peremptory strikes to remove all black prospective jurors from Baldwin's petit jury; (4) to request a psychiatric evaluation of Baldwin; (5) to obtain an expert witness to address the effects of Baldwin's use of drugs and alcohol; (6) to prepare Baldwin for sentencing; (7) to conduct an adequate voir dire; and (8) to move to recuse the state trial judge.

The state coram nobis court held a two-day hearing on Baldwin's ineffective assistance of counsel claim. Although Baldwin presented witnesses and submitted additional deposition testimony in support of his claim, the state court found that he failed to demonstrate that his counsel's performance was deficient or that he suffered prejudice therefrom. The court thus denied him relief. Additionally, the district court denied Baldwin relief on his ineffective assistance claim without conducting an evidentiary hearing. Baldwin asserts that the lack of a hearing in the district

---

[6]In addition, see Part II.B for a discussion of Baldwin's defaulted claims.

court was erroneous because the state prevented him from fully developing the facts underlying his claims before the state court.

Upon careful review of the record, we conclude that Baldwin received a full and fair hearing in the state coram nobis court on his ineffective assistance of counsel claim, and that he has not demonstrated that he was entitled to an evidentiary hearing. *See Meeks v. Singletary,* 963 F.2d 316, 319 (11th Cir.1992) ("[A] habeas corpus petitioner is entitled to an evidentiary hearing on his or her claims *if he or she alleges facts that, if proved at the hearing, would entitle petitioner to relief.*"), *cert. denied,* 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993); *Routly v. Singletary,* 33 F.3d 1279, 1284 (11th Cir.1994) (stating that the petitioner bears the burden of establishing the need for a federal evidentiary hearing in addition to a state court hearing on the claim at issue), *cert. denied,* (1995). We find that the record "fairly supports" the state court's findings of fact and presume, pursuant to 28 U.S.C. § 2254(d), that those factual findings are correct. *Weeks v. Jones,* 26 F.3d 1030, 1034 (11th Cir.1994), *cert. denied,* 513 U.S. 1193, 115 S.Ct. 1258, 131 L.Ed.2d 137 (1995); *see also Meeks,* 963 F.2d at 319.[7] We also agree with the district court that "[n]one of the evidence Baldwin suggest[ed] he would adduce [at an evidentiary hearing] [was] newly discovered in the sense that it was not known or, through the exercise of reasonable diligence could not have been discovered, at the time of the coram nobis hearing." District Court Order at 120. Baldwin failed to demonstrate cause and prejudice for his failure to produce the evidence earlier, or a fundamental miscarriage of justice in not receiving a hearing. *See Weeks,* 26 F.3d at 1043 ("A habeas [corpus] petitioner is not entitled to an evidentiary hearing to develop facts that he failed to show in state

---

[7]Because Baldwin filed his habeas corpus petition before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, that act does not apply to Baldwin's petition. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997).

court unless he can establish cause for and prejudice from such failure."); *Mills v. Singletary,* 63 F.3d 999, 1022 (11th Cir.1995) ("A petitioner seeking a federal evidentiary hearing based on the inadequate development of a material fact at an earlier state court hearing ... must show either: (1) cause ... and prejudice ...; or (2) that a fundamental miscarriage of justice will result unless a federal evidentiary hearing is held.") (citing *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 11-12, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)), *cert. denied,* 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996).

On the merits, Baldwin's claim fails. At the state coram nobis evidentiary hearing, Windell Owens, Baldwin's trial and direct appellate counsel, testified to the following facts. Owens became licensed to practice law in 1948 and practiced continuously in Monroe County, doing about fifty percent criminal work. At the time of Baldwin's trial, in 1977, Owens had twenty-nine years of experience and had tried approximately fifteen or twenty felony jury trials per year. In preparation for Baldwin's trial, Owens met with Baldwin on at least eight occasions and discussed Baldwin's version of the facts of the case—which matched Baldwin's statements to law enforcement officials—and his personal and family history. Owens also interviewed Baldwin's codefendant, Edward Horsley, law enforcement officers and other witnesses, including questioning them about the voluntariness of Baldwin's confession. In addition, Owens "discussed at length any possible witnesses [with Baldwin] but ... was never given any [names] other than generally the people who either took statements and things of that sort. [Baldwin] never furnished [him] with a single fact witness that was not already involved in the case." Coram Nobis Hr'g at 38. Thereafter, Owens made "a number of efforts" to contact Baldwin's family, but they would not return his telephone calls or respond to his letters. Coram Nobis Hr'g at 38. He acknowledged that he did not secure any written documents or evidence about Baldwin's family life or anything else from Baldwin's home

state of North Carolina prior to the trial or sentencing. With the above information as foundation, we move to Baldwin's specific allegations.

Baldwin first alleges that his trial counsel was ineffective in failing to challenge the racial composition of the grand jury that indicted him. Upon due consideration, it is clear that Owens made a strategic decision not to launch such a challenge. At the time of Baldwin's trial, in order to challenge the composition of the grand jury under the Equal Protection Clause of the Fourteenth Amendment, Baldwin would have had to demonstrate, among other things, that blacks were excluded from grand juries in Monroe County "over a significant period of time[,]" and not just that they were under-represented on his particular grand jury. *See Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Birt v. Montgomery,* 725 F.2d 587, 606-07 (11th Cir.) (*en banc* ), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). In addition, to challenge the racial composition under the Sixth Amendment's requirement that jury venires be selected from a fair cross-section of the community, Baldwin would have had to show that the under-representation was due to the "systematic exclusion of [blacks] from the selection process." *See Cunningham v. Zant,* 928 F.2d 1006, 1013 (11th Cir.1991) (citing *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)).

Owens testified that he did not challenge the racial composition of the grand jury because, although he apparently discovered who was on the grand jury and thought that he looked at its racial composition, he did not think he could succeed at such a challenge. He stated that "[such challenges] had been done on several occasions prior to [Baldwin's] trial and [they] had never been successful." Coram Nobis Hr'g at 47. Owens's testimony evinces that he strategically considered and rejected this plan of action. *See Strickland,* 466 U.S. at 681, 104 S.Ct. 2052 ("[S]trategic

11

choices must be respected ... if they are based on professional judgment.").  When we view his decision in light of the circumstances at the time of Baldwin's trial, we cannot say that it was unreasonable.  Baldwin is not entitled to relief on this claim.[8]

Baldwin next alleges that his trial counsel rendered ineffective assistance in failing to request a change of venue.  Baldwin's supporting facts as alleged in the supplement to his second amended habeas corpus petition are that (1) his case was "one of the most highly publicized cases in Monroe County[ ]";  and (2) "[h]ad counsel competently moved for a change of venue, said motion should have been granted and [Baldwin] would have received a trial in a venue which would have provided him with an impartial jury."  Supp. to Second Amended Petition at 4-5.  Baldwin also submitted during his coram nobis proceeding, newspaper articles from the Monroe Journal concerning his case—the only local newspaper in Monroe County at the time—and the testimony of Steven Stewart.  Stewart's family owned the only local radio station in Monroe County during the relevant time, and Stewart himself was the editor of the Monroe Journal.  Stewart testified that "[t]here was probably more coverage of this crime than any other crime that occurred that year or any years before or after that."  Coram Nobis Hr'g at 120.

At the state coram nobis proceeding, Owens testified that he and Baldwin discussed a possible change of venue.  Owens stated that (1) he did not believe that a venue change was warranted because neither Baldwin nor the victim was from Monroe County, and thus the impact

---

[8]Although Baldwin attempts to establish a *prima facie* case that his equal protection rights were violated through proffering statistics concerning the percentage of blacks in Monroe County at the time of his trial and the make-up of the grand jury that indicted him, it appears that he did not present this evidence to the state coram nobis court.  *See* Coram Nobis Order at 17 ("Baldwin ... introduced no evidence to show that there was any defect in the grand jury selection process or the racial composition of the grand jury.  Baldwin never proved the racial makeup of the grand jury that indicted him.").

of the offense on the community was less than if the victim had been a local resident; (2) he did not think that the court would have granted the request; and (3) he thought that Baldwin had "a better chance ... in Monroe County because at the time [Owens] knew all the jurors." Coram Nobis Hr'g at 42. In fact, "there was not a single member of that jury panel that [he] did not know[,] and [he] knew their background and knew their families and ... thought that was an advantage to [him], or to Mr. Baldwin, [his] client[.]" Coram Nobis Hr'g at 50-51.

We affirm the denial of relief to Baldwin on this claim. First, Baldwin failed to show that his counsel's performance was deficient in not requesting a change of venue. Owens's decision was clearly a tactical one that was reasonable under the circumstances. In addition, Baldwin failed to demonstrate that he suffered any prejudice from Owens's alleged error. Under Alabama law, "[n]ewspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible." *Thompson v. State,* 581 So.2d 1216, 1233-34 (Ala.Crim.App.1991) (internal quotation marks omitted) (concluding that Thompson had not demonstrated prejudice concerning his ineffective assistance of counsel claim based on a failure to request a change of venue, because petitioner's evidence—newspaper articles about his case—failed to establish an entitlement to a change of venue and thus no reasonable probability existed that, "but for the absence of a properly supported motion for a change of venue, the outcome of his trial would have been different"), *cert. denied,* 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). The fact that a case generates widespread publicity does not, in and of itself, warrant a change of venue. *See, e.g., Waldrop v. State,* 459 So.2d 953, 955 (Ala.Crim.App.1983) ("Publicity alone, even if inordinate, is not sufficient to warrant a change of venue. Some prejudicial

13

effect of the publicity must be shown."), *aff'd,* 459 So.2d 959 (Ala.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Knight v. Dugger,* 863 F.2d 705, 713-23 (11th Cir.1988). Because Baldwin did not satisfy either the performance or prejudice prong of *Strickland,* we affirm the district court's denial of relief on this claim.

Baldwin also contends that his counsel rendered ineffective assistance when he failed to request a psychiatric evaluation of Baldwin. At the state coram nobis hearing, Owens testified that he did not request a psychiatric examination of Baldwin because he had no reason to make such a request, in that Baldwin never did or said anything to indicate to him that he had any mental problems.[9] Additionally, according to Owens, Baldwin did not appear to have trouble communicating and was generally cooperative. When asked if he had considered the possibility of having Baldwin examined psychiatrically, Owens testified that he and Baldwin "had some discussion one time about going in lines like that but [they] decided against it." Coram Nobis Hr'g at 60. Owens also attested that Baldwin once told him that he was not crazy, stating, "I've got more sense than you've got." Coram Nobis Hr'g at 78. We note that in addition to having experience as a criminal defense attorney, Owens had legal experience with civil commitments.

In light of the above testimony, Owens's decision to forgo a psychiatric examination was a reasonable, strategic decision and did not constitute ineffective assistance. *See Weeks,* 26 F.3d at 1037 (stating that trial counsel's observations of petitioner did not "put [him] on notice that he was dealing with less than a rational individual" in support of the court's finding that the lawyer's failure to locate previous psychological examinations did not constitute ineffective assistance). Owens did

---

[9]Owens "never had any indication from [Baldwin] that that should be done." Coram Nobis Hr'g at 43.

14

not have a reason to request such an examination, and Baldwin does not point to anything that should have indicated to Owens that such an evaluation was necessary. *See, e.g., Weeks,* 26 F.3d at 1040 (petitioner alleged that his counsel was ineffective for not requesting a psychological examination "when [petitioner] waived jury participation in his sentencing following his conviction[,]" and demanded the death penalty.).

Baldwin also failed to demonstrate that he suffered any prejudice, *i.e.,* that but for Owens's alleged unprofessional errors, a reasonable probability exists that the outcome of his trial would have been different, or that the "sentencer would have weighed the balance of the aggravating and mitigating factors to find that the circumstances did not warrant the death penalty." *Weeks,* 26 F.3d at 1042 (internal quotation marks omitted). In the supplement to his second amended petition for writ of habeas corpus, Baldwin states that "[h]ad counsel had [him] evaluated by a psychologist or psychiatrist counsel would have been able to minimize [his] involvement in the commission of the charged offenses and would have been able to individualize [him] at sentencing." Supp. to Second Amended Petition at 4. Baldwin's attempted showing of prejudice was insufficient to satisfy his burden under *Strickland.*

Baldwin's next ground for his ineffective assistance of counsel claim is based on his trial counsel's failure to challenge the prosecutor's use of peremptory strikes to remove all of the black prospective jurors from Baldwin's petit jury. Owens testified at the state coram nobis hearing that he noticed the prosecutor removing all the blacks from the jury. When asked why he did not challenge the prosecutor's actions, he replied that he "thought it would be useless to do so" given the state of the law at that time. Coram Nobis Hr'g at 50. However unfortunate, Owens's view of the law, and thus his decision, was not unreasonable.

15

At the time of Baldwin's trial, *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), governed challenges to prosecutorial use of peremptory strikes to remove blacks from a jury.[10] To state a claim under *Swain,* it was not enough for a defendant to show that the prosecutor removed blacks from his or her particular jury. 380 U.S. at 223, 85 S.Ct. 824, 13 L.Ed.2d 759. The defendant had to demonstrate that the prosecutor, over time, systematically excluded blacks from serving on petit juries. *Swain,* 380 U.S. at 223-24, 85 S.Ct. 824. Based on *Swain,* Owens's belief, that a challenge to the prosecutor striking all the blacks from Baldwin's jury alone would not have succeeded, was correct. Baldwin did not even successfully show at the state coram nobis hearing that the prosecutor's actions in his case constituted a systematic practice. Although Owens testified that the juries in Monroe County tended to have a larger percentage of white jurors than black jurors, he denied that, in his years of practice, the prosecutor struck all black individuals from the juries. Baldwin is not entitled to relief on this claim.

Even if we assume that Baldwin's trial counsel rendered ineffective assistance in failing to challenge the prosecutor's use of peremptory strikes, Baldwin has not demonstrated any prejudice therefrom. Although "[w]e would have more confidence in the verdict had it been delivered by a constitutionally composed jury, with both black and white members[,]" overwhelming evidence supported Baldwin's conviction in this case. *Jackson v. Herring,* 42 F.3d 1350, 1362 (11th Cir.), *cert. denied,* 515 U.S. 1189, 116 S.Ct. 38, 132 L.Ed.2d 919 (1995). Having conducted a thorough

---

[10]Because Baldwin's conviction became final before the Supreme Court decided *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Batson* does not apply retroactively, the applicable standard is the one articulated in *Swain. See Allen v. Hardy,* 478 U.S. 255, 257-58, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) ("We conclude that our decision in *Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced.") (footnote omitted).

review of the record, however, "we cannot conclude there is a "reasonable probability that, but for counsel[s'] ... errors, the result of the proceeding would have been different.' " *Jackson,* 42 F.3d at 1362 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052) (alteration in original); *see also Waters v. Thomas,* 46 F.3d 1506, 1510 (11th Cir.) ("[Petitioner's] guilt stage ineffective assistance of counsel claims are due to be denied because the evidence of guilt was so overwhelming that [he] cannot show prejudice from any of the claimed shortcomings of his counsel at the guilt stage."), *cert. denied,* 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995).

Baldwin also contends that his trial counsel failed to present mitigating evidence at, and to prepare him for, the sentencing hearing. We find this claim to be without merit. Owens testified that he made "several efforts to try to get anything [from Baldwin] that [Owens] thought might help him[.]" Coram Nobis Hr'g at 40. Although Owens discussed the sentencing hearing with Baldwin at length, Baldwin was unable to provide him with any beneficial witnesses. After getting information from Baldwin about his family, Owens made numerous efforts to contact them, but they did not return his telephone calls or respond to his letters.

We recognize that Baldwin's testimony contradicted that of Owens. Baldwin testified that Owens came to see him only twice for ten minutes each between the verdict and sentencing hearing, once asking about his childhood. Baldwin denied that Owens asked him for sentencing witnesses and stated that he did not understand what was occurring during the sentencing hearing. The state coram nobis court found that "Owens [was] a credible witness and that Baldwin [was] not." Coram Nobis Order at 15. We must accept the state court's credibility determination and thus credit Owens's testimony over Baldwin's. *See Coulter v. Herring,* 60 F.3d 1499, 1503 (11th Cir.1995)

17

(applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination), *cert. denied,* 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).

In light of the above testimony, Baldwin has not demonstrated that his counsel's performance was deficient. We agree with the state coram nobis court and the district court that Baldwin's failure to be forthcoming with information that may have been helpful to him hindered Owens's ability to obtain and present any additional mitigating evidence. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").[11] Once again, even if Owens's preparation for sentencing was deficient, Baldwin failed to demonstrate that "the balance of aggravating and mitigating circumstances would have been different." *Horsley,* 45 F.3d at 1493.

Baldwin next contends that his trial counsel rendered ineffective assistance in failing to conduct more extensive questioning of the potential jurors about their racial attitudes and views of the death penalty on voir dire. Owens testified that he did not further question the jurors because he knew all of the jurors on the venire and felt that he knew what their attitudes were.[12] In addition, Owens did not believe that it was necessarily appropriate to question them about their racial views because he felt that when a lawyer was preparing to try a case before a jury, "the less you rile a prospective juror, ... the better off you are going to be." Coram Nobis Hr'g at 50.

---

[11]Owens placed Baldwin on the stand, who testified to his difficulties as a child and other circumstances of his background.

[12]Owens stated, "I thought I knew the people pretty intimately myself—every one on the jury panel." Coram Nobis Hr'g at 72.

18

We cannot say that Owens's choice concerning the amount of voir dire constituted ineffective assistance of counsel. At the time of Baldwin's trial, Owens had about twenty-nine years of experience practicing in Monroe County and personal knowledge of all of the potential jurors. He testified that he knew the entire jury panel, including their families and backgrounds. Owens's amount of questioning of the potential jurors was clearly a reasonable, strategic choice, in light of his personal knowledge of, and familiarity with, them. *See Strickland,* 466 U.S. at 681, 104 S.Ct. 2052. We thus reject this ground of Baldwin's ineffective assistance claim.

Baldwin also argues that Owens's representation was ineffective because he failed to obtain mitigating evidence concerning the effects of Baldwin's use of drugs. At the state coram nobis hearing, Owens testified that he did not investigate Baldwin's prior drug use, because Baldwin had never mentioned any such use until he testified at the sentencing hearing.[13] Baldwin's failure to mention such use occurred despite Owens's efforts to obtain favorable mitigating evidence, including interviewing Baldwin and attempting to contact his family. In addition, from his interaction with Baldwin, Owens had no reason to believe that Baldwin had ever had any problems with drugs. Baldwin, however, testified at the state coram nobis hearing that he told Owens about his drug use prior to the sentencing hearing.

Again, we give deference to the state court's finding that "Owens's testimony [was] credible and Baldwin's [was] not." Coram Nobis Order at 10; *see Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to redetermine credibility of witnesses whose demeanor has been observed by the

---

[13]"[I]t had never been mentioned to [Owens] or to [his] associate trying the case that [Baldwin and Horsley] had ever taken a drug in their life [sic]." Coram Nobis Hr'g at 62.

19

state trial court, but not by them."); *Smith v. Kemp,* 715 F.2d 1459, 1465 (11th Cir.) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."), *cert. denied,* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983). We therefore accept Owens's testimony and conclude that, under the circumstances, his failure to obtain drug-use mitigating evidence was not a basis for a finding of ineffective assistance of counsel. In addition, we find that Baldwin has not demonstrated that had Owens obtained and presented such evidence, the result of his sentencing would have been different. *See Bolender v. Singletary,* 16 F.3d 1547, 1556-57 (11th Cir.) (to prove prejudice from a sentencing-phase error, petitioner must show that a "reasonable probability [existed] that the balance of aggravating and mitigating circumstances would have been different"), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994).

Finally, Baldwin contends that his lawyer was constitutionally ineffective because he failed to request the recusal of the state trial judge. Owens testified that he did not request the trial judge's recusal because he saw no reason to do so. "In fact, [Owens] thought [Baldwin's] trial [judge] had more knowledge of the law than anybody [they] could [have gotten] and probably would [have been] more fair than anybody else...." Coram Nobis Hr'g at 63-64. In addition, based on his experience with the court, he had no reason to think that the judge was biased in any way. We agree with the district court that "[a]bsent some evidence that recusal was warranted, Baldwin has failed to show that his lawyer's performance was deficient or that he was prejudiced by the absence of a recusal motion." District Court Order at 141.

In summary, we conclude that Baldwin is not entitled to relief on his ineffective assistance of counsel claim on the basis of any of the grounds that he has raised. With respect to each ground,

20

he failed to demonstrate that his counsel rendered deficient performance or that he suffered prejudice from the alleged errors. We affirm the judgment of the district court on this issue.

*B. Procedurally Barred Claims*

Whether Baldwin is procedurally barred from raising a particular claim is a mixed question of law and fact, which we review *de novo. Agan v. Vaughn,* 119 F.3d 1538, 1541 (11th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 1305, 140 L.Ed.2d 470 (1998). Federal courts may not review a claim that the petitioner procedurally defaulted under state law "if the last state court to review the claim state[d] clearly and expressly that its judgment rest[ed] on a procedural bar, and the bar present[ed] an independent and adequate state ground for denying relief." *Hill v. Jones,* 81 F.3d 1015, 1022 (11th Cir.1996) (citing *Harris v. Reed,* 489 U.S. 255, 260-61, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)), *cert. denied,* --- U.S. ----, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997); *Agan,* 119 F.3d at 1548.

Baldwin raises five claims that we find to be procedurally barred from federal habeas corpus consideration as a result of his failure to adhere to state procedural rules.[14] First, Baldwin failed to

---

[14]Baldwin has procedurally defaulted the following alleged deficiencies in the performance of his trial and direct appellate counsel because he failed to raise them to support his ineffective assistance of counsel claim during the state coram nobis proceeding: (1) failure to challenge the under-representation of blacks from service on the petit juries in Monroe County; (2) failure to investigate the robbery; (3) failure to investigate the rape allegations; (4) failure to request money for expert witnesses; (5) failure to investigate adequately the circumstances surrounding Baldwin's custodial statements; (6) failure to investigate the aggravating circumstances; (7) failure to raise the defaulted claims on direct appeal; (8) failure to challenge the trial judge's and prosecutor's practice of intentional racial discrimination in selecting grand jury forepersons in Monroe County; and (9) failure to object to the state's introduction at sentencing of his codefendant's hearsay statement. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir.1992). Although Baldwin alleges that the ineffective assistance of his coram nobis counsel constitutes cause for these defaulted claims, "[t]he Supreme Court has clarified that attorney error or ineffective assistance of counsel in a state collateral proceeding is not cause to override a procedural bar that precludes review of a claim in federal court." *Weeks,* 26 F.3d at 1046 (citing

raise the following issues in the state court—at trial, on direct appeal or during his state coram nobis proceeding: (1) the state violated his Sixth and Fourteenth Amendment rights where blacks were systematically under-represented from serving on petit juries in Monroe County, at the time of his trial; (2) the state violated his rights under the Eighth Amendment when an unacceptable risk of racial prejudice affected the imposition of his death sentence;[15] and (3) the state violated his right to confrontation under the Sixth Amendment when his codefendant's hearsay statement was introduced during Baldwin's sentencing hearing. Under Alabama law, his failure to raise these claims at trial or on direct appeal constituted a procedural bar to presenting them in a subsequent state collateral proceeding. *See, e.g., Jackson v. State,* 501 So.2d 542, 544 (Ala.Crim.App.1986) ("Coram nobis is not available to review issues which could have been raised at trial or on direct appeal."), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 746 (1987). Baldwin is therefore procedurally barred from raising them for the first time when seeking federal habeas corpus relief. *See Collier v. Jones,* 910 F.2d 770, 772 (11th Cir.1990) ("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").

In addition, Baldwin presented the following issues for the first time during his state coram nobis proceeding: (1) the state violated his Sixth and Fourteenth Amendment rights where blacks

*Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2566-68, 115 L.Ed.2d 640 (1991)).

[15]Baldwin argues that he raised this claim during the state coram nobis proceeding as a challenge to the Alabama death penalty statute for its discriminatory and arbitrary application to poor black males, and that he presented this claim as part of Count 12(f), which the district court reviewed on the merits, in his federal habeas corpus petition. As did the district court, we find this claim to be distinct from his general challenge of the Alabama death penalty statute, and conclude that it is procedurally barred.

were systematically under-represented on grand juries in Monroe County, at the time of his trial; and (2) the state violated his rights under the Equal Protection Clause of the Fourteenth Amendment when the prosecutor used his peremptory strikes to exclude all black persons from the petit jury in Baldwin's case. The state coram nobis court found that Baldwin procedurally defaulted these claims because he did not raise them at trial or on direct appeal, and that he failed to demonstrate successfully cause for, and prejudice from, the defaults. The Alabama Court of Criminal Appeals affirmed the decision. *See Baldwin,* 539 So.2d at 1104-05. Because the state court concluded that Baldwin procedurally defaulted these claims, he is not entitled to federal habeas corpus review of them on the merits. *See Agan,* 119 F.3d at 1548 ("A state court's determination that a claim is barred from review in state court because of the petitioner's failure to comply with state law procedures for presenting the claim precludes federal habeas [corpus] review of that claim....").

Baldwin, however, may overcome these procedural defaults—and obtain federal habeas corpus review of his barred claims on the merits—if he can demonstrate cause for the defaults and actual prejudice resulting therefrom, or a fundamental miscarriage of justice in this court's refusing to review his claims. *See Agan,* 119 F.3d at 1548-49; *Horsley,* 45 F.3d at 1489 ("The Supreme Court has held that, "[u]nless a habeas [corpus] petitioner shows cause and prejudice, a court may not reach the merits of ... procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claim.' ") (quoting *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 2528, 120 L.Ed.2d 269 (1992)) (alteration in original and emphasis omitted); *Hill,* 81 F.3d at 1023 ("[I]n extraordinary cases, a federal habeas [corpus] court may grant the writ without a showing of cause and prejudice to correct a fundamental miscarriage of justice."). For Baldwin to show "cause," the procedural default "must result from some objective factor external

to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." *McCoy v. Newsome,* 953 F.2d 1252, 1258 (11th Cir.), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). Under the prejudice prong, Baldwin must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *McCoy,* 953 F.2d at 1261. In addition, before a federal habeas corpus court will excuse a default of a guilt-phase claim under the fundamental miscarriage of justice standard, "a petitioner must prove "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent.' " *Hill,* 81 F.3d at 1023 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). For a petitioner to gain habeas corpus review of a defaulted sentencing phase claim based on a fundamental miscarriage of justice, he or she "must show that "but for constitutional error at his sentencing hearing, no reasonable juror could have found him eligible for the death penalty under [state] law.' " *Hill,* 81 F.3d at 1023 (quoting *Sawyer,* 112 S.Ct. at 2522-23).

As an initial matter, Baldwin asserts that the district court erred in not conducting an evidentiary hearing on the issues of cause and prejudice for each of his defaulted claims. A habeas corpus petitioner, however, is not entitled to an evidentiary hearing on the threshold issues of cause and prejudice, or fundamental miscarriage of justice, unless he or she proffers "specific facts which support a finding that one of [the] exceptions to the procedural default rule exists." *Hill,* 81 F.3d at 1023. We conclude that Baldwin has failed to make the requisite showings that would entitle him to a hearing, or to overcome the procedural defaults.

Baldwin cites as "cause" for his defaults the facts that: (1) the trial judge and prosecutor practiced intentional racial discrimination and condoned a racially discriminatory system at the time

24

of his trial; and (2) his trial counsel rendered ineffective assistance in defaulting the claims. We acknowledge that constitutionally ineffective assistance of trial counsel may establish cause for a procedural default. *See Hill,* 81 F.3d at 1024. Because we concluded, however, that Baldwin's counsel did not render ineffective assistance, Baldwin must demonstrate some other "cause" to overcome the procedural bar. *See* Part II.A above (concerning the ineffective assistance of counsel claim); *see also Hill,* 81 F.3d at 1030 ("[P]rocedurally-defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a second claim."). With regard to his first assertion of cause, we reject it as overly broad. Assuming for the sake of argument that the trial judge and prosecutor were practicing intentional racial discrimination, Baldwin fails to explain how their conduct hindered his compliance with the procedural rules. Therefore, Baldwin is not entitled to relief on his defaulted claims or an evidentiary hearing.

With regard to his failure to challenge the prosecutor's use of peremptory strikes, Baldwin also asserts that "[w]ithin an environment which tolerated and encouraged racial prejudice and racial discrimination, there existed cause for the Petitioner's failure to raise [this] claim...." We reject his "environment" argument as meritless. In addition, we reject Baldwin's contention that he was unable to raise his claim concerning the unacceptable risk of racial prejudice in his receiving the death penalty because the "procedural context in which the default occurred impeded [him] from raising the claim in a timely manner." Baldwin did not present the issue at trial, on direct appeal, *or before the state coram nobis court,* which means in essence that he believes that in his case, the federal court was the only proper "procedural context" in which he could even present this claim. This assertion is without merit and warrants no further discussion. *See Keeney v. Tamayo-Reyes,* 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) ("Just as the State must afford the petitioner a

25

full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits.").[16]

*C. Voluntariness of Baldwin's Confessions*[17]

Baldwin contends that the state trial court failed to make a finding by a preponderance of the evidence that his custodial statements were voluntary, because the court admitted the confessions after stating that they were "*prima facie* voluntary." After considering, on its own initiative during Baldwin's direct appeal, whether the trial court properly admitted Baldwin's custodial statements, the Alabama Court of Criminal Appeals concluded that the trial court properly admitted the statements. *See Baldwin,* 372 So.2d at 28-30. Baldwin asserts that the independent determinations of the Alabama appellate court and the district court may not remedy the trial court's failure to make a preponderance finding prior to admitting the statement. We agree with the district court that

---

[16]Under the prejudice prong, Baldwin must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *McCoy,* 953 F.2d at 1261. He must demonstrate "not merely, that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (internal quotation marks omitted). He has failed in this regard with respect to all of his barred claims.

Additionally, Baldwin has not demonstrated that a fundamental miscarriage of justice would result from this court's declining to consider the merits of his defaulted claims. Baldwin has not showed that he was "actually innocent" to overcome his guilt-phase defaults, or that "no reasonable juror could have found him eligible for the death penalty under [state] law[ ]"to overcome his sentencing-phase defaults. *Hill,* 81 F.3d at 1023 (internal quotation marks omitted).

[17]Although Baldwin did not raise the issues in Parts II.C and II.D of this opinion in his state coram nobis petition, the district court addressed the claims on the merits. We assume, without deciding, that the claims are not procedurally barred and accordingly, also conduct a merits review of them.

Baldwin unduly focuses on semantics, and reject Baldwin's implied assertion that trial courts must use exact words when determining the admissibility of custodial statements.

"On review of a habeas [corpus] petition, we make an independent assessment of the voluntariness of the [petitioner's] confession." *Waldrop v. Jones,* 77 F.3d 1308, 1316 (11th Cir.) (citing *Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)), *cert. denied, ---* U.S. ----, 117 S.Ct. 247, 136 L.Ed.2d 175 (1996); *see also McCoy,* 953 F.2d at 1263. In so doing, we presume the state court's subsidiary and historical findings of fact to be correct pursuant to § 2254(d). *See Waldrop,* 77 F.3d at 1316; *McCoy,* 953 F.2d at 1263 (stating that subsidiary findings, such as the circumstances of the defendant's interrogation and the actions of law enforcement officers, "are entitled to a presumption of correctness if fairly supported by the record[ ]"); *Harris v. Dugger,* 874 F.2d 756, 762 (11th Cir.) ("As the Court stated in *Miller,* "... subsidiary factual questions, such as ... whether in fact the police engaged in the intimidation tactics alleged by the defendant ... are entitled to the § 2254(d) presumption.'") (quoting *Miller,* 474 U.S. at 112, 106 S.Ct. 445), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989). In addition, "[w]hen a state court fails to make explicit findings, a state court's denial of the claim "resolves all conflicts in testimony bearing on that claim against the criminal defendant.' " *Waldrop,* 77 F.3d at 1316 (quoting *Culombe v. Connecticut,* 367 U.S. 568, 604-05, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)). This court must assess Baldwin's claim under the totality of the circumstances surrounding the statements. *Waldrop,* 77 F.3d at 1316; *Harris,* 874 F.2d at 761 ("A confession is voluntary if, under the totality of the circumstances, it is the product of the defendant's free and rational choice.").

After reviewing the record, we conclude that the evidence in this case is substantial that law enforcement officers advised Baldwin of his constitutional rights before taking each of his

statements, that Baldwin understood and waived those rights, and that the officers did not use promises, threats, force or coercion to induce Baldwin into making the statements. The trial court conducted an *in camera* evidentiary hearing, at which Baldwin testified and presented witnesses, to determine the admissibility of his custodial statements. Although Baldwin testified that his statements were coerced through threats and physical beatings, the witnesses that he called to testify on his behalf did not corroborate his story. The district court found that law enforcement officers read Baldwin the *Miranda* warnings on five separate occasions before questioning him or obtaining statements from him—the first time in connection with their questioning him only about the stolen truck in which he was arrested and not about the murder—and that Baldwin signed at least four separate forms waiving his *Miranda* rights. In addition, at the state evidentiary hearing, the state presented testimony from the law enforcement officer who took Baldwin's statement, that he, or anyone in his presence, did not threaten or physically abuse Baldwin to induce him to confess. We agree with the district court and conclude that Baldwin made his statements knowingly and voluntarily.

*D. Non-statutory Mitigating Evidence*[18]

---

[18]We also reject Baldwin's contentions that (1) the district court erred in denying his motion to expand the record with portions of his trial that had been recorded but never transcribed, and (2) this court should allow him to adopt certain claims and remand the case to the district court. As Baldwin acknowledges, we granted his motion to supplement the record on appeal with his proffered evidence.

In November 1995, a representative of the Alabama Attorney General's Office met with Baldwin's counsel and counsel for his codefendant and advised them to get certain disks containing portions of the trials recorded onto audio tapes so that they could be transcribed. In a subsequent telephone conversation, however, Baldwin's lawyer declined to have Baldwin's disks audiotaped at that time. Because Baldwin deliberately forwent the opportunity to have the missing records transferred into a usable format, he cannot now use the unavailability of the tapes (and as a result the transcripts) as a crutch

Baldwin contends that the state court denied him a meaningful sentencing hearing when the court limited its consideration solely to those mitigating factors listed in the Alabama death penalty statute, in violation of *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).[19] In capital cases, the "sentencer" may not refuse to consider, or be precluded from considering, any relevant mitigating evidence. *Hitchcock v. Dugger,* 481 U.S. 393, 394, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Baldwin alleges that the sentencing court did not consider: (1) the fact that Baldwin was neglected as a child; (2) Horsley's dominance over Baldwin; (3) the effects of Baldwin's drug and alcohol abuse; (4) his prison record; (5) his good deeds; (6) his positive relationships; (7) his lack of education; (8) the effects of racial discrimination on him; (9) the effects of his incarceration at an early age; and (10) the uncertainty concerning his role in the offense. The district court rejected this claim on the merits, concluding that no *Hitchcock* error had occurred in this case, and even if any such error had occurred, it was harmless.

We conclude after considering the totality of the circumstances, that the sentencing court gave Baldwin an open opportunity to present whatever evidence he thought would be helpful as statutory or nonstatutory mitigating circumstances, and did not believe itself to be constrained to consider, and did not limit its consideration to, only statutory mitigating circumstances. *See Delap*

---

for postponing review, or obtaining further review, of his claims. *See United States v. Garrison,* 133 F.3d 831, 846 n. 28 (11th Cir.1998) (stating that it is the parties' responsibility "to ensure that the record on appeal is complete for our review of the appellate issues"). In addition, we do not read the Supreme Court's decision in *Dobbs v. Zant,* 506 U.S. 357, 113 S.Ct. 835, 122 L.Ed.2d 103 (1993), to require courts to consider information when the party proffering it has purposefully forgone the opportunity to present it to the court in a readable format.

[19]We note that Baldwin does *not* allege that the court prevented him from *presenting* nonstatutory mitigating evidence.

*v. Dugger,* 890 F.2d 285, 304 (11th Cir.1989) ("In judging whether a violation of *Hitchcock* occurred ... the court must consider the totality of the circumstances."), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990). Although whether a *Hitchcock* error occurred is a legal question, "it is almost entirely dependent upon the answer to a question of fact: did the sentencing judge consider any and all nonstatutory mitigating circumstance evidence that was presented to him?" *Spaziano v. Singletary,* 36 F.3d 1028, 1032 (11th Cir.1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995). The district court's finding, therefore, with regard to this factual question—*i.e.,* what the sentencing judge knew or did—is subject to reversal only if clearly erroneous. *See Spaziano,* 36 F.3d at 1032 (reviewing the district court's findings—based on the state record, documentary evidence, or inferences from other facts—that the sentencing judge knew he was bound to consider, and did consider, nonstatutory mitigating evidence for clear error).

The state court conducted a sentencing hearing on September 9, 1977. Baldwin's trial counsel put him on the stand to testify on his own behalf with regard to mitigating evidence. Baldwin testified that (1) he was nineteen at the time of the sentencing hearing; (2) he moved into a hotel at the age of thirteen because he and his father did not get along; (3) he then made a living "street hustling"; (4) he attended school for about two months into his tenth-grade year before he was "terminated"; (5) his two older brothers had served or were still serving time in the penitentiary; (6) he had not spoken to his sister in about six years; (7) he had not seen his family in about three years; (8) his family did not come to see him while he was in prison in North Carolina or in Alabama on the instant charges; and (9) he had been arrested about thirty times since he left home. After his attorney impressed upon him that the sentencing hearing was the time to tell the court whatever he thought might help him to get a life sentence rather than the death penalty, Baldwin

stated that (1) he was a drug addict in prison; (2) he and Horsley obtained and ingested some "T.H.C." pills in Atlanta, Georgia, during the underlying offense; and (3) he "had a hard time growing up."

Thereafter, the following colloquy occurred:

THE COURT: Brian Keith Baldwin, today is the day you have in court to tell this judge whatever is on your mind and as Mr. Owens has told you, now is your time to tell the judge anything that you feel like might be helpful to you in the position that you find yourself in. I want to give you every opportunity in the world that I know about.

BALDWIN: You mean problems in growing up and stuff?

THE COURT: Anything you feel like you can tell this Judge that will help you in your present position.

Sentencing Hr'g at 260-61. Baldwin then testified that people, particularly at school, accused him of many things that he had not done, that he got into a lot of fights at school and was suspended, and that his witnesses did not testify that they knew the law enforcement officers had beat Baldwin because the officers threatened them. Baldwin then stated, "I ain't saying I'm guilty but I might be guilty for murder but I ain't guilty for robbery down here. That's all I got to say." Sentencing Hr'g at 262.

Owens subsequently asked Baldwin questions about any possible injuries or accidents that may have affected his mind. Baldwin recounted a truck accident when he was ten years old, after which he suffered headaches. After Owens stated that he had no further questions for Baldwin, the sentencing judge asked Owens if he had "anything else that [he] might be able to offer in the way of mitigating circumstances[.]" Sentencing Hr'g at 263. Owens replied:

No, sir, Your Honor, I'm sorry to say that I can't think of any other matter. I've gone over this particular hearing with the defendant at length and have been absolutely unable to dig into his background much through his family because I haven't—I've made several attempts to contact them and they, for some reason, have not seen fit to even answer a letter or to

31

return a call and I've had no way of delving too deeply into his background other than what he himself tells me. Based on those interviews, his age and what he has told from the witness stand are the only mitigating circumstances that I have been able to dig up, Your Honor.

Sentencing Hr'g at 263-64. The prosecution then presented arguments concerning the aggravating factors of the offense, and Baldwin's lawyer urged the court to sentence Baldwin to life imprisonment and not to the death penalty "based on his age at the time he was arrested and also on the hard life that he obviously lived...." Sentencing Hr'g at 266.

After a recess, the court sentenced Baldwin to the death penalty, finding that the aggravating circumstances outweighed the mitigating circumstances. The court found four aggravating circumstances: (1) Baldwin committed the charged offense while under a sentence of imprisonment in North Carolina, from which he had escaped; (2) Baldwin pleaded guilty as a youthful offender in North Carolina for a felony involving the use of violence against the victim; (3) the capital felony occurred during the commission of a robbery or flight after a robbery; and (4) the offense was especially heinous, atrocious or cruel.[20] The court then "consider[ed] mitigating circumstances as described in Title 15, Section 342(9) of the 1940 Code of Alabama as amended[,]" and found Baldwin's age at the time of the offense to be the only mitigating circumstance. Sentencing Hr'g at 269.

---

[20]The court also found as an aggravating circumstance the fact that Baldwin was adjudged "delinquent by reason of the charge of assault to commit rape." Sentencing Hr'g at 269. The Alabama Court of Criminal Appeals found this to be an improper aggravating circumstance because delinquency was not considered a conviction under North Carolina law. *See Baldwin,* 456 So.2d at 125.

At the time of Baldwin's sentencing, Alabama law required the court to hold a separate hearing to determine whether to sentence the defendant to death or to life imprisonment without parole.

> In the hearing, evidence may be presented *as to any matter that the court deems relevant to sentence* and shall *include* any matters relating to any of the aggravating and mitigating circumstances enumerated in sections 13-11-6 and 13-11-7. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements....

Ala.Code § 13-11-3 (1975) (emphasis added). From the plain language of the statute, it is clear that the defendant could present evidence that was relevant to his or her sentence, *including* but not limited to, the statutory mitigators.

Upon careful consideration, we conclude that Baldwin's claim is without merit.[21] *See Atkins v. Singletary,* 965 F.2d 952, 962 (11th Cir.1992) (after reviewing the record, the court rejected petitioner's argument that the sentencing judge did not consider nonstatutory mitigating factors, and finding "it ... more correct to say that the [sentencing] judge did not *accept*—that is, give much weight to—[the defendant's] nonstatutory factors."), *cert. denied,* 515 U.S. 1165, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995); *Palmes v. Wainwright,* 725 F.2d 1511, 1523 (11th Cir.) (stating that this court could not conclude, just because the sentencing judge only discussed the statutory aggravating and mitigating factors in her order, that the other evidence in mitigation was not considered), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). "Our review is completed once it is established that a full hearing was conducted in which appellant's counsel was given an opportunity

---

[21]I acknowledge my dissent on a similar issue in the case of Baldwin's codefendant. See *Horsley*, 45 F.3d at 1495-99 (Hatchett, J., dissenting). The majority opinion in that case provides binding precedent for Baldwin's claims, to which I must defer.

to present all of the mitigation evidence. There is no indication whatsoever that the trial judge did not conscientiously consider everything presented." *Palmes,* 725 F.2d at 1523. Indeed, in *Card v. Dugger,* we stated that the "[l]ack of reference in a sentencing report to nonstatutory circumstances is not ..., standing alone, sufficient evidence of a *Hitchcock* violation to justify relief." 911 F.2d 1494, 1522 (11th Cir.1990).

In this case, during the sentencing hearing the judge made it clear that he welcomed any information in mitigation that Baldwin had to offer, *not just concerning the statutory mitigating circumstances.* In addition, the prosecutor made no comment or objection to the evidence of mitigating—whether statutory or nonstatutory—circumstances. Additionally, Baldwin's lawyer stated that "[Baldwin's] age *and what he has told from the witness stand* " were the only mitigating circumstances that he could present. Although the court did not discuss any nonstatutory mitigating evidence, and found Baldwin's age—a statutory mitigating circumstance—to be the only mitigating factor, the court preceded his findings through stating that it had "considered the evidence presented at trial *and at said sentence hearing* [.]" Sentencing Hr'g at 268; *see also Card,* 911 F.2d at 1523 ("[W]hile the sentencing order did not specify a finding of the presence or absence of nonstatutory mitigating circumstances, ... the judge did not state that he had only reviewed those mitigating factors spelled out in the statute, but rather stated that he had considered and weighed "all the evidence in the case.' "); *Horsley,* 45 F.3d at 1491 ("We believe that Horsley's focus on one isolated statement of the sentencing judge place[d] far too much stress on just one statement in a long

34

discourse, a discourse which, taken as a whole, shows that the sentencing court probably considered nonstatutory mitigating evidence.") (dicta).[22]

### III. CONCLUSION

For the foregoing reasons, we conclude that Baldwin is not entitled to federal habeas corpus relief. The claims that he has not procedurally defaulted, are without merit. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

---

[22]Even if any error had occurred, it would have been harmless under the facts of this case. A *Hitchcock* error is harmful only if it " "had substantial and injurious effect or influence in determining the jury's [or the court's] verdict.' " *Bolender v. Singletary*, 16 F.3d 1547, 1567 (11th Cir.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994). After reviewing the mitigating circumstances that Baldwin alleges the sentencing court did not consider with the aggravating circumstances and facts of this case, we find that Baldwin has not demonstrated the requisite "effect" to obtain habeas corpus relief on this claim. *See Bolender,* 16 F.3d at 1567.